**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| _____ ) | |
| FRIENDS OF THE EARTH, et al. ) | |
| ) | No. 1:21-cv-02317-RDM |
| Plaintiff, ) | |
| ) | Judge Randolph D. Moss |
| vs. ) | |
| ) | |
| DEBRA A. HAALAND, et al. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO INTERVENE**

Defendants do not oppose Louisiana's participation in this matter as a permissive intervenor, but oppose intervention "of right" because Louisiana cannot establish all necessary elements for intervention of right. In this narrow case, Plaintiffs are seeking review only of whether the Department of the Interior (Interior) adequately complied with the National Environmental Policy Act (NEPA) when it issued its record of decision to hold Lease Sale 257, Defendants adequately represent Louisiana's interest in defending the NEPA analysis.

**BACKGROUND**

I.     **BACKGROUND**

A.     **Lease Sale 257**

Planning for Lease Sale 257 began over six years ago, when Interior started developing the 2017-2022 Five Year Outer Continental Shelf Leasing Program (the "Five-Year Program"), pursuant to § 18 of the Outer Continental Shelf Land Act. The Five-Year Program proposed ten region-wide lease sales to occur in the Gulf of Mexico, and one to occur in the Cook Inlet

1

offshore Alaska. The sale challenged here, Lease Sale 257, is the eighth sale proposed in the Gulf of Mexico under the Five-Year Program.

The Bureau of Ocean Energy Management (Bureau) published three Environmental Impact Statements (EISs) related to Lease Sale 257, each one tiering to and updating its predecessor. Those documents will be included in the administrative record lodged with the Court, and they are:

(1)     The Outer Continental Shelf Oil and Gas Leasing Program: 2017-2022 Final Programmatic EIS (the "Program EIS"),

(2)     The Gulf of Mexico OCS Oil and Gas Lease Sales: 2017-2022 Gulf of Mexico Lease Sales 249, 250, 251, 252, 253, 254, 256, 257, 259, and 261 Final Multisale EIS (the "Multisale EIS"); and

(3)     The Gulf of Mexico OCS Lease Sale Final Supplemental Environmental Impact Statement 2018 (the "2018 Supplemental EIS").

In the Multisale EIS, the Bureau prepared for each of the ten region-wide lease sales tentatively scheduled for the Gulf of Mexico by analyzing the potential environmental impact of the decision to hold a single lease sale—the first being Lease Sale 249—because the analyzed sale and its reasonably foreseeable impacts would be representative of subsequent planned sales. The Multisale EIS also considered a single sale's cumulative impacts, and said that the Bureau would conduct further NEPA reviews for later sales, as necessary. The Bureau later prepared the 2018 Supplemental EIS to update information in the Multisale EIS and to inform its individual decisions on subsequent sales.

On August 31, 2021, the Bureau issued the Record of Decision for Lease Sale 257 at issue in this case.[1] In issuing the Record of Decision, the Bureau reviewed relevant information that had become available since the 2018 Supplemental EIS and verified that the 2018

---

[1] The Record of Decision is available at
https://www.boem.gov/sites/default/files/documents/oilgas-energy/GOM-LS-257.pdf.

Supplemental EIS adequately addressed the environmental effects of Lease Sale 257. *See id.*, Record of Decision at 2. It determined "[t]here are no new circumstances, information, or changes in the proposed action or its impacts that require supplementation of the [2018 Supplemental] EIS." *Id.*

In the August 31, 2021 Record of Decision, the Bureau recognized this was not the first time it had issued a Record of Decision for Lease Sale 257. It noted that on January 21, 2021, after the final day of the Trump Administration, the Bureau issued an initial Record of Decision for Lease Sale 257. That Record of Decision was rescinded on February 18, 2021, pending "review and reconsideration of Federal oil and gas permitting and leasing practices," consistent with Section 208 of Executive Order 14,008 and the Secretary of the Interior's broad authority to administer the offshore oil and gas leasing program under the Outer Continental Shelf Lands Act. The Record of Decision challenged here states that "[t]he Department now has determined to move forward with the process for [Gulf of Mexico] Lease Sale 257, consistent with the Secretary's authorities and discretion under applicable law." *Id.*, Record of Decision at 1.

**B.     Conservation Groups' Suit for Alleged Failure to Comply with NEPA**

The same day Interior issued the Record of Decision for Lease Sale 257, and before any final notice of sale issued, conservation groups filed a two-count complaint alleging failure to comply with NEPA. Compl., Doc. 1. Plaintiffs' first count alleges Defendants failed to take a "hard look" at the effects of Lease Sale 257 as required by NEPA. *Id.* ¶¶ 169-184. Plaintiffs' second count alleges the 2018 Supplemental EIS is outdated and that Defendants violated NEPA by failing to supplement it. *Id.* at ¶¶ 185-195. Plaintiffs requested that the Court order an expedited schedule in the case, *see* Mot. for Hearing, Doc. 11, which request Defendants opposed, Response to Mot. for Hearing, Doc. 14.

C.      **Louisiana's Motion to Intervene**

On September 13, 2021, Louisiana moved to intervene in this case of right or, in the alternative, as a permissive intervenor. Mot. to Intervene, Doc. 13. Louisiana's motion to intervene focuses on a separate suit, *Louisiana v. Biden*, No. 2:21-cv-778 (W.D. La.), in which the United States District Court for the Western District of Louisiana enjoined Interior officials from implementing the leasing pause described in Section 208 of Executive Order 14,008. Among other things that Defendants dispute, Louisiana's Motion to Intervene asserts that a victory for Plaintiffs in this suit will "contradict the Louisiana court's order" granting Louisiana and other State Plaintiffs' Motion for a Preliminary Injunction and will reinstate the "policy the Louisiana court already enjoined as contrary to statutory command." Mot. at 1, Doc. 13.

The same day that it moved to intervene in this case, Louisiana also moved the Western District of Louisiana to order a status conference to "sort out" Louisiana's concerns regarding this lawsuit. Mot. for Status Conf., *Louisiana* Doc. 161, attached hereto as Exhibit A. At the conference, Louisiana "suggested that [*Friends of the Earth*] was filed to undermine and interfere with the [Western District of Louisiana]'s issuance of the Preliminary Injunction" and Louisiana further "outlined several options, including that the [Western District of Louisiana] enjoin the new suit from being filed or reconsider the Motion to Intervene [*Louisiana* Doc. 73] filed by the plaintiffs [to *Friends of the Earth*]." Minutes of Status Conf., *Louisiana* Doc. 167, attached hereto as Exhibit B. The Western District of Louisiana declined to take the actions Louisiana outlined, including "because the issues [presented in the two cases] are not the same." *Id.*

4

## II.     LEGAL STANDARDS

### A.     The Standard of Review Applicable on the Merits

Judicial review of agency action under NEPA is governed by the Administrative

Procedure Act (APA), 5 U.S.C. § 706. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 872 (1990);

*Karst Envtl. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1295 (D.C. Cir. 2007) (citation omitted).

The reviewing court may set aside agency action only if it is found to be "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This

standard is "narrow and a court is not to substitute its judgment for that of the agency." *Motor*

*Vehicle Mfs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983). The Court must uphold

an agency's decision if it finds "adequate support in the record." *J.A. Jones Mgmt. Servs. v. FAA*,

225 F.3d 761, 765 (D.C. Cir. 2000); *see also El Conejo Americano of Tex., Inc. v. DOT*, 278

F.3d 17, 20 (D.C. Cir. 2002).

In applying this standard of review to NEPA cases, the "role of the courts is simply to

ensure that the agency has adequately considered and disclosed the environmental impact of its

actions and that its decision is not arbitrary or capricious." *Balt. Gas & Elec. Co. v. Nat. Res.*

*Def. Council, Inc.*, 462 U.S. 87, 97–98 (1983). Thus, in reviewing the sufficiency of an EIS, a

court is charged only with ensuring that the agency has presented a "reasonably thorough

discussion of the significant aspects of the probable environmental consequences." *California v.*

*Block*, 690 F.2d 753, 761 (9th Cir. 1982) (quoting *Trout Unltd., Inc. v. Morton*, 509 F.2d 1276,

1283 (9th Cir. 1974)). Further, "a reviewing court may not 'fly speck' an EIS and hold it

insufficient on the basis of inconsequential, technical deficiencies." *N. Plains Res. Council v.*

*Lujan*, 874 F.2d 661, 665 (9th Cir. 1989) (citation omitted); *see also WildEarth Guardians v.*

*Jewell*, 738 F.3d 298, 308 (D.C. Cir. 2013). "Once satisfied that a proposing agency has taken a

'hard look' at a decision's environmental consequences, the review is at an end." *Block*, 690 F.2d at 761 (citing *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n.21 (1976)).

**B.      The Standard for Intervention of Right**

An applicant for intervention as of right under Fed. R. Civ. P. 24(a)(2) must establish four elements:

> (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests.

*Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.,* 136 F.3d 153, 156 (D.C. Cir. 1998)). "Failure to satisfy any one of the requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Defendants challenge only the fourth element. "The original burden of showing inadequate representation rests on the applicant for intervention." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). The applicant "need only show that representation of his interest 'may be' inadequate." *Seminole Nation of Oklahoma v. Norton*, 206 F.R.D. 1, 10 (D.D.C. 2001) (quoting *Dimond*, 792 F.2d at 192).

**ARGUMENT**

**A.      Given the Narrow Confines of APA Review, Defendants Adequately Represent the Interests Louisiana Wishes to Represent that Are Relevant in This Case**

Louisiana's motion fails to satisfy the fourth requirement for intervention as of right because Defendants adequately represent the interests identified by Louisiana that are at issue in this case. Plaintiffs' challenge deals only with whether Interior's NEPA analysis for Lease Sale

257 was sufficient. In this suit for APA review, that question must be decided based on the existing record and Interior's stated reason for the decision. *See Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated in part on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977); *In re Subpoena Duces Tecum Served on the Office of the Comptroller of Currency*, 156 F.3d 1279, 1280 (D.C. Cir. 1998). Given these narrow confines, Louisiana's proffer that it intends to raise a range of other arguments—all of which it is advancing in a separate case, and none of which are relevant in this case—fails to demonstrate Defendants would not adequately represent Louisiana's interests.

Louisiana's arguments demonstrate that it does not intend to intervene for the purposes of litigating the issue before the Court, but instead plans to raise a series of irrelevant arguments. Louisiana asserts, "[a]s federal officials, Defendants have no direct interest in Louisiana's . . . role in the [Outer Continental Shelf Lands Act ] consultation process." Mot. at 18. But this NEPA case has nothing to do with the Outer Continental Shelf Lands Act consultation process. Louisiana's consultation interests are not implicated, and any argument addressing them will not be relevant.

Louisiana further asserts that, in contrast to Defendants, Louisiana "want[s] a definitive ruling that rejects Defendants' discretion to rescind Lease Sale 257's ROD." *Id.* But this case is not about Defendants' discretion to rescind the prior Record of Decision for Lease Sale 257— Louisiana has challenged that rescission in its separate lawsuit. *This case* presents a NEPA challenge to the August 31, 2021 Record of Decision for Lease Sale 257.

Similarly, Louisiana's next contention—that the Administration's general policy position favoring more environmental analysis in the oil and gas leasing program is arbitrary and capricious, *see* Mot. at 18-19—confuses what is under review in this case. This case does not

seek judicial review of the "Administration's publicly stated policy position" under the arbitrary and capricious standard. It is limited to the existing record supporting the Record of Decision for Lease Sale 257. Although Louisiana's challenge in its separate suit is broader, the issue here is a narrow one. In this APA case, proposed intervenors "cannot be permitted to present their 'substantive defenses,' which appear to fall outside the administrative record, however powerful, in the narrowly tailored action before the Court." *Seminole Nation*, 206 F.R.D. at 10.

Courts in this District recognize adequate representation and deny intervention of right where the limited nature of judicial review of agency action renders any differences between the parties irrelevant. For example, in *Environmental Defense Fund, Inc. v. Costle*, a large utility company that held several water use permits sought to intervene in a case reviewing agency action, the resolution of which could affect its permits. 79 F.R.D. 235, 243 (D.D.C. 1978), *aff'd*, (D.C. Cir. July 31, 1978). The court recognized that the company had more specific interests than other parties, but the nature of the suit meant "the parties [were] limited to arguing for or against the validity of these regulations" and therefore "[i]ndividual interests such as those [the proposed intervenor sought] to advance [were] largely irrelevant." *Id.*; *see also United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 991 (2d Cir. 1984) (denying intervention of right to proposed plaintiff intervenor that claimed more "focused" interests where proposed intervenor sought similar relief to existing plaintiffs).

In *Seminole Nation of Oklahoma v. Norton*, two bands (matrilineal lines within the Seminole Nation) sought intervention of right in a suit for this Court's judicial review of an agency action that rejected on procedural grounds the Seminole Nation's attempt to amend its constitution to disenfranchise and remove those two bands from the Seminole Nation. 206 F.R.D. at 4-6. The bands argued the defendant agency was "not concerned with [proposed

intervenors'] citizenship per se, but merely with having what it perceives as the appropriate

procedures followed with respect to the amendment of the Seminole Constitution" and as a result

the agency had not raised certain defenses the bands would raise. *Id.* at 10. Although the bands

clearly had a substantial interest in the outcome of the litigation that was different from any

existing party, this Court denied intervention. *Id.* at 10. The Court explained the complaint

presented "a single request for judicial review, pursuant to the APA" and "[g]iven the APA's

constraints, any new theories presented to this Court by the [bands] which did not comprise the

basis for the [agency]'s decision necessarily fall outside of the scope of the administrative

record, and thus, are improper for this Court's consideration." *Id.* This was so even though the

bands and the agency were adverse in another action then pending in a different District Court;

the court concluded that those adverse interests were "more appropriately confined" to that

separate litigation. *Id.* at 9-10.

    Similarly here, Louisiana's explication that the federal government's interests are often

broader than a state government's interests is not relevant here because this case is about the

adequacy of the NEPA analysis underlying Lease Sale 257, and Defendants adequately represent

Louisiana's interest in that regard.

    The cases Plaintiffs cite are distinguishable either because they are not limited to a binary

referendum on whether a decision is adequate based on a closed record, or because the

intervenor's own actions could be at issue and under review in those cases. In those contexts, the

parties were given opportunities to advance their differing interests. *E.g.*, *Fund For Animals, Inc.*

*v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (recognizing the interests of proposed-intervenor

Mongolia may diverge from defendant Fish and Wildlife Service and be relevant because the

"[Fish and Wildlife Service] may be required to present its assessment of the quality of

Mongolia's argali [sheep] conservation program"); *Dimond*, 792 F.2d at 192–93 (recognizing in constitutional challenge to District of Columbia no-fault insurance statute "[t]he District would be shirking its duty were it to advance [the insurance company's] narrower interest at the expense of its representation of the general public interest"); *100Reporters LLC v. United States Dep't of Just.*, 307 F.R.D. 269, 279–80 (D.D.C. 2014) (addressing Freedom of Information Act litigation where "plaintiff's interest lies in disclosure, the government entity's interest lies in responding appropriately to the plaintiff's request, and the intervenor's interest lies in protecting its trade secrets and confidential information" (internal quotation marks and citation omitted)). As the court in *Environmental Defense Fund* explained, "though it is true that in some cases the existence in the moving party of a more narrow interest than those represented by the current parties may justify intervention, the cases so holding primarily involve situations in which the court must perform a quasi-administrative function." 79 F.R.D. at 242.

Defendants nonetheless do not oppose granting Louisiana permissive intervention in this case.

## B.   Louisiana's Representations in Its Motion to Intervene Require Correction

Beyond the issue of intervention, there are several incorrect representations in Louisiana's Motion to Intervene, two of which Defendants are compelled to correct at this time.[2]

First, contrary to Louisiana's claim, *see* Mot. at 9, Defendants immediately complied with the *Louisiana v. Biden* injunction. Although Louisiana is correct that Defendants issued the Record of Decision for Lease Sale 257 after Louisiana moved to compel and for an order to

---

[2] The Background section in Louisiana's Motion contains numerous characterizations of the governing statutory framework, the decision process leading up to Lease Sale 257, and the Federal Government's actions relating to Sec 208 of Executive Order 14,008. Mot. at 2-9. While Defendants here do not itemize each of their disagreements with the points made therein, Defendants reserve the right to correct any mischaracterizations as may become appropriate later in the proceedings.

show cause, Defendants were complying with the injunction all the while, and had spent

hundreds of hours preparing for Lease Sale 257 before Louisiana filed its motion. Opp. to Mot.

to Compel at 2-4, *Louisiana* Doc. 155, attached hereto as Exhibit C. That time included work to

ensure the Record of Decision complied with NEPA. *Id.* at 4. Louisiana filed its motion to

compel without attempting to ascertain whether Defendants were working toward lease sales.

And, despite having evidence of that work now, Louisiana opted to ignore it in its present

Motion. That evidence belies its representation that "Defendants failed to comply with the

injunction for months." Mot at 18.

Second, Louisiana misrepresents Defendants' position in *Louisiana v. Biden*, as asserting

"the Executive had the discretion to unilaterally cancel lease sales, that doing so was reasonable

in light of climate concerns, and that the courts had no jurisdiction to review such actions." Mot.

at 18. Rather, to date, Defendants have maintained that Louisiana cannot challenge Presidential

action under the APA, and that Louisiana's APA claims as stated against the agencies are not

actionable because they are improperly programmatic, target non-final action, or otherwise fail to

satisfy the APA's requirements. Opp. to Prelim. Injunction at 9-20, *Louisiana* Doc. 120, attached

hereto as Exhibit D.

## CONCLUSION

Defendants do not oppose Louisiana's participation in this matter as a permissive

intervenor, but oppose the contention that they are entitled to participate as an intervenor of right.

Respectfully submitted this 17th day of September, 2021,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*Luther L. Hajek*
LUTHER L. HAJEK
Trial Attorney

11

U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1376; Fax: (303) 844-1350
E-mail: luke.hajek@usdoj.gov

Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of September, 2021, I filed the above pleading with the Court's CM/ECF system, which provided notice of this filing by e-mail to all counsel of record.


<u>/s/ *Luther L. Hajek*</u>
Luther L. Hajek