UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE EARTH, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> DEBRA A. HAALAND, et al., <br><br> *Defendants*. | Case No. 21-cv-02317-RDM |

**PLAINTIFFS' RESPONSE TO THE STATE OF LOUISIANA'S MOTION TO INTERVENE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ iii

    I.    The State of Louisiana Mischaracterizes the Law and the Facts. ............................2

        A.    Louisiana v. Biden is Not Related to this Case............................................3

        B.    The State Incorrectly Characterized the Statutory Requirements of OCSLA ........................................................................................................5

    II.    The Court Should Impose Four Reasonable Conditions to Foster the Timely and Efficient Resolution of this Case. .........................................................7

CONCLUSION..................................................................................................................11

## TABLE OF AUTHORITIES

**Cases** Page(s)

*Agric. Retailers Ass'n v. U.S. Dep't of Labor*,
  837 F.3d 60 (D.C. Cir. 2016)..................................................................................................6

*Beauregard, Inc. v. Sword Servs., LLC*,
  107 F.3d 351 (5th Cir. 1997) ..................................................................................................7

*California v. Watt*,
  712 F.2d 584 (D.C. Cir. 1983) ................................................................................................6

*Ctr. for Biol. Div. v. Nishida*,
  2021 WL 827189 (D.D.C. March 4, 2021)..............................................................................6

*Friends of the Headwaters v. U.S. Army Corps of Eng'rs*,
  2021 WL 1061162 (D.D.C. March 20, 2021)........................................................................10

*Louisiana v. Biden*,
  2021 WL 2446010 (W.D. La. June 15, 2021) .........................................................................4

*NYC C.L.A.S.H., Inc. v. Carson*,
  2019 WL 2357534 (D.D.C. June 4, 2019)...........................................................................6, 7

*Oceana v. Bureau of Ocean Energy Mgmt.*,
  962 F. Supp. 2d 70 (D.D.C. 2013) ..........................................................................................9

\* *Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*,
  338 F.R.D. 1 (D.D.C. 2021)...............................................................................................7, 10

*San Juan Cnty. v. United States*,
  503 F.3d 1163 (10th Cir. 2007) ...............................................................................................7

*Smuck v. Hobson*,
  408 F.2d 175 (D.C. Cir. 1969) ..............................................................................................10

*Stringfellow v. Concerned Neighbors in Action*,
  480 U.S. 370 (1987).................................................................................................................7

\* *W. Org. of Res. Councils v. Jewell*,
  2015 WL 13711094 (D.D.C. July 15, 2015).................................................................8, 10, 11

\* *WildEarth Guardians v. Salazar*,
  272 F.R.D. 4 (D.D.C. 2010).........................................................................................7, 8, 10, 11

**Statutes**

28 U.S.C. § 1391........................................................................................................................9

43 U.S.C. § 1332...........................................................................................................................6

43 U.S.C. § 1344...........................................................................................................................6

43 U.S.C. § 1345...........................................................................................................................6

\* *Authorities upon which Plaintiffs chiefly rely are marked with an asterisk*

Plaintiffs Friends of the Earth, et al. file this response to the State of Louisiana's (the "State") motion to intervene as Defendants. Mot. Intervene, Dkt. 13 (Sept. 13, 2021). The State seeks to intervene in this case largely to present arguments that have no bearing on the issues and claims presented in Plaintiffs' complaint. Given the unrelated nature of the arguments the State seeks to raise, Plaintiffs suggest that the State's participation as *amicus curiae* is the most appropriate avenue to present the issues raised in its motion to intervene. In the alternative, Plaintiffs do not oppose intervention subject to four common-sense measures to ensure that the State's participation does not unnecessarily complicate or delay this litigation. The following four conditions will foster timely and efficient resolution of this case: (1) ensuring that the State's intended motion for transfer will not delay resolution of this case by allowing summary judgment briefing to commence and proceed concurrently with any motion to transfer; (2) barring the State from injecting collateral issues and cross claims into the litigation; (3) limiting the State to 20 pages for memoranda and 10 pages for replies; and (4) requiring the State to file its briefing concurrently with Defendants.[1] Plaintiffs respectfully request that the Court include these limitations in any order granting intervention.

The State made several incorrect representations in its motion about unrelated issues that Plaintiffs seek to address and which support the requested conditions. Specifically, this litigation does not interfere with the proceedings or orders in *State of Louisiana, et al. v. Biden, et al.*, No. 2:21-cv-00778 (W.D. La.) ("*Louisiana v. Biden*"), as the State claims. *See, e.g.*, Dkt. 13 at 1, 19–20. The two lawsuits concern different administrative actions, different issues, different claims,

---

[1] Plaintiffs conferred with the State regarding these proposed conditions. The State consented to concurrent briefing outlined in condition four but do not consent to the other conditions. The State did offer to agree to expedited briefing on a motion to transfer but did not agree to allow summary judgment briefing to begin before resolution of that motion.

and different parties, such that relief in one will not undermine jurisdiction in the other. Indeed, just yesterday, the court in *Louisiana v. Biden* recognized "the issues [in the two cases] are not the same." Min. of Status Conference, Dkt. 167 at 2 (Sept. 17, 2021), attached as Ex. 1. The State also misrepresents the Outer Continental Shelf Lands Act ("OCSLA"). OCSLA does not provide a regulatory role for the State in the leasing process or restrict the discretion of the Bureau of Ocean Energy Management ("the Bureau") to reject recommendations from the State or modify a scheduled lease sale. Plaintiffs address the State's mischaracterizations below as background before turning to the requested conditions on the State's intervention.

I. **The State of Louisiana Mischaracterizes the Law and the Facts.**

In its motion, the State mischaracterizes both the issues in *Louisiana v. Biden* and the requirements of OCSLA. The State incorrectly asserts that *Louisiana v. Biden* is similar to this case, and that an outcome for Plaintiffs in this case will contradict the Louisiana court's order for preliminary injunction. To the contrary, the two cases involve different parties, different issues and different claims arising out of different administrative actions. *Louisiana v. Biden* is a direct challenge to Executive Order 14008, issued by President Biden on January 27, 2021, which ordered a pause on federal oil and gas leasing. This case, in contrast, challenges the validity of Lease Sale 257, specifically the Bureau's review of the sale's environmental impacts under the National Environmental Policy Act ("NEPA"). The Bureau must meet NEPA requirements for all lease sales notwithstanding the Executive Order's validity. The State also misconstrued Interior's obligations under OCLSA by asserting Lease Sale 257 must happen regardless of all other legal requirements. The requirements of OCSLA are not at issue in this case. In any event, the State's characterizations are simply wrong.

### A.     *Louisiana v. Biden* is Not Related to this Case.

*Louisiana v. Biden* and this litigation are inherently distinct cases. *First*, the two lawsuits concern different actions and issues. The plaintiffs in *Louisiana v. Biden* challenged the agency's implementation of Executive Order 14008. *Louisiana v. Biden*, Memo. Ruling, Dkt. 139 at 33 (June 15, 2021); *see also Louisiana v. Biden*, Dkt. 1 at 6 (Compl. ¶ 7) (Mar. 24, 2021). This litigation concerns a challenge to a different agency action, the August 31, 2021, Record of Decision for Lease Sale 257. Dkt. 1 at 46 (Compl. ¶ 170) (Aug. 31, 2021).

Moreover, the cases involve different core issues and claims. In *Louisiana v. Biden*, the plaintiffs claimed Executive Order 14008 allegedly resulted in the halting of new oil and gas leases on public lands and offshore waters in violation of the Administrative Procedure Act, OCSLA, and the Mineral Leasing Act ("MLA"). *Louisiana v. Biden*, Dkt. 1 at 6 (Compl. ¶ 7). As the court in *Louisiana v. Biden* has explained, the *Louisiana* case "is about whether the Government Defendants had the constitutional and/or statutory authority to pause new oil and gas leases on public lands or in offshore waters pending completion of a comprehensive review and reconsideration. Only Section 208 of Executive Order No. 14008 is being attacked." *Louisiana v. Biden*, Order Den. Intervention, Dkt. 111 at 6 (May 10, 2021). Thus, the core issue in *Louisiana v. Biden* is whether "a Pause of federal oil and gas leasing [is] in violation of two Congressional statutes—MLA and OCSLA." *Id.*, Dkt. 139 at 33. In contrast, the core issue in this case is whether Interior violated a separate statute, NEPA, by relying on arbitrary analysis and failing to prepare a supplemental environmental impact statement before reaching its decision to hold Lease Sale 257. *Louisiana v. Biden* does not concern NEPA and the adequacy of the environmental review of the lease sales. *Compare* Dkt. 1 at 46–51 (Compl. ¶¶ 169–195) and *Louisiana v. Biden*, Dkt. 1 at 43–50 (Compl. ¶ 127–177).

*Second*, the parties in the two cases are different. None of the Plaintiffs in this case are parties in *Louisiana v. Biden*. Several conservation groups filed a motion to intervene in the Louisiana case, including Plaintiffs in this case. *Louisiana v. Biden*, Conservation Groups' Mot. Intervene, Dkt. 73 (Apr. 27, 2021). However, the *Louisiana* Plaintiffs directly opposed the motion and the court ultimately denied the motion to intervene. *Louisiana v. Biden*, Plaintiff States' Opp'n Mot. Intervene, Dkt. 96 (May 4, 2021); *id.*, Dkt. 111. The defendants in *Louisiana v. Biden* also do not overlap with this case; they include Joseph R. Biden, Jr., in his official capacity as President of the United States, along with 16 other officials who are not named as defendants in this action. *Louisiana v. Biden*, Dkt. 1 at 1–2 (March 24, 2021). In contrast, the defendants in this case include the Department of Interior and the Bureau—the agency charged with completing the NEPA review challenged in this case. *See* Dkt. 1 at 1.

In its motion for intervention, the State argues that "[a] victory for Plaintiffs in *this* suit, however, would contradict the Louisiana court's order" and "reinstitute the same anti-development policy the Louisiana court [] enjoined as contrary to statutory command." Dkt. 13 at 1. The State is wrong. The preliminary injunction in *Louisiana v. Biden* halted the lease sale pause, but the court did not order Interior to hold Lease Sale 257, regardless of any other legal requirements. Specifically, the court in *Louisiana v. Biden* issued a preliminary injunction enjoining executive branch officials "from implementing the Pause of new oil and natural gas leases on public lands or in offshore waters as set forth in Section 208 of Executive Order 14008." *Louisiana v. Biden*, No. 2:21-CV-00778, 2021 WL 2446010, at *22 (W.D. La. June 15, 2021). As the Federal Defendants in *Louisiana v. Biden* recently asserted "[t]he Court's June 15 Order did not exempt the Department of the Interior from complying with NEPA in future lease sales [] and the Department of the Interior's decisions under NEPA or other law applicable to its

Record of Decision are subject to properly brought claims." *Louisiana v. Biden*, Defs.' Resp. to Pls.' Mot. for Status Conference, Dkt. 164 at 2 (Sept. 15, 2021). Plaintiffs in this case do not challenge the preliminary injunction or seek to defend the leasing pause. Plaintiffs challenge the decision to hold Lease Sale 257 and its reliance on flawed environmental analysis.

The *Louisiana* court even acknowledged this difference in its order granting a preliminary injunction when it concluded "there is a huge difference between the discretion to stop or pause a lease sale because the land has become ineligible for a reason such as an environmental issue, and, stopping or pausing a lease sale with no such issues and only as a result of Executive Order 14008." *Louisiana v. Biden*, Dkt. 139 at 25. Most recently, at a status conference in *Louisiana v. Biden*, held on September 16, 2021, the State argued to the *Louisiana* court that this suit would undermine and interfere with the court's preliminary injunction order, and asked that court to "enjoin the new suit from being filed." Ex. 1 at 1. After the Federal Defendants explained that this case would not cause noncompliance with the preliminary injunction order, the *Louisiana* court agreed and stated the issues in the two cases "are not the same." *Id*. at 2. In short, both cases concern different parties, different actions, and different issues: one concerns the Bureau's compliance with NEPA, and the other involves the Executive Branch's compliance with the MLA and OCSLA.

**B.      The State Incorrectly Characterized the Statutory Requirements of OCSLA.**

In its motion, the State incorrectly claims that OCSLA "specifically precludes the Secretary from making significant amendments to the five-year plan after its enactment" and limits the Bureau's discretion to cancel or delay a lease sale, once scheduled. Dkt. 13 at 4, 19–20. Whether OCSLA gives the Bureau discretion to cancel a lease sale is a collateral issue that is not relevant to this case. And, in any case, the State is wrong. OCSLA provides the Bureau with broad discretion to administer the offshore leasing program in a way that balances the nation's

5

energy needs with protection of the environment, coastal communities, and safety. *E.g.*, 43 U.S.C. §§ 1332, 1344(a)(1); *see also California v. Watt*, 712 F.2d 584, 588 (D.C. Cir. 1983) (finding OCSLA has a "pyramidic" structure that provides Interior broad latitude at the lease sale stage to decide whether and when to hold sales proposed in a five-year program).

In addition, the State claims in its motion that it has a "statutorily vested" regulatory role in the leasing process under OCSLA. Dkt. 13 at 14–15. Again, this is simply not true. During the leasing process the Secretary "shall accept" recommendations only if they provide for a reasonable balance between the national interest and the well-being of the citizens of affected states. 43 U.S.C. § 1345(c); *see also id*. §§ 1332, 1344(a)(1) (directing the Bureau to balance energy needs with environmental concerns and safety). While the Bureau is obligated to receive and consider recommendations from affected states, it cannot accept those obligations if they are misaligned with the national interest in holding the sale.

\*   \*   \*

The State is wrong that the *Louisiana v. Biden* case overlaps with this lawsuit. A ruling here would resolve separate issues based on separate actions and involving separate parties; it would not contradict a ruling in the *Louisiana* court. Further, the Bureau's obligations under OCSLA are not at issue in this case and, in any event, OCSLA does not limit the Bureau's discretion to consider the State's recommendations or to modify or cancel a lease sale. Given the State's desire to raise unrelated and collateral issues, Plaintiffs believe that the State's participation as *amicus* is the most appropriate avenue to allow the State to voice its concerns, should they seek leave to do so. *See, e.g.*, *Agric. Retailers Ass'n v. U.S. Dep't of Labor*, 837 F.3d 60, 66 (D.C. Cir. 2016); *Ctr. for Biol. Div. v. Nishida*, Civ. No. 21-119, 2021 WL 827189, at \*3 (D.D.C. March 4, 2021); *NYC C.L.A.S.H., Inc. v. Carson*, No. CV 18-1711, 2019 WL

2357534, at *4 (D.D.C. June 4, 2019) ("An amicus brief would allow [proposed intervenor's] position . . . to be fully heard."). In the alternative, this Court should impose reasonable conditions on intervention to ensure fair and efficient resolution of the issues.

**II.     The Court Should Impose Four Reasonable Conditions to Foster the Timely and Efficient Resolution of this Case.**

The Supreme Court has established that "[a]n intervention of right under the amended Rule 24(a) may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of proceedings." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 n.2 (1987); *see* Fed. R. Civ. P. 24(a) advisory committee's note on 1966 amendment ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."). Conditioning intervention for purposes of judicial efficiency is "a firmly established principle." *Beauregard, Inc. v. Sword Servs., LLC*, 107 F.3d 351, 352–53 (5th Cir. 1997); *see also San Juan Cnty. v. United States,* 503 F.3d 1163, 1189 (10th Cir. 2007) (recognizing Rule 24 permits "limitations on the scope of intervention"). The Court has the discretion to "impose appropriate conditions or restrictions upon the intervenor's participation in the action … to ensure the fair, efficacious, and prompt resolution of the litigation." *Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*, 338 F.R.D. 1, 6 (D.D.C. 2021) (citations omitted). "Even where intervention is a matter of right, district courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action." *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 13 (D.D.C. 2010) (citations omitted). "The district court's discretion to impose reasonable restrictions on participation is consonant with its inherent power to manage the litigation before it, as well as a necessary instrument in accommodating the two conflicting goals of intervention: *i.e.*, 'to achieve judicial economies of

7

scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending.'" *Id*. (citations omitted); *accord W. Org. of Res. Councils v. Jewell*, Civ. No. 14-1993, 2015 WL 13711094, at *7 (D.D.C. July 15, 2015). Plaintiffs respectfully request that the Court require the State to file concurrent briefing as a reasonable condition of intervention and as the parties have agreed. In addition, Plaintiffs respectfully request that the Court impose three additional reasonable conditions should it allow intervention.

*First*, with respect to a motion for transfer, this Court should limit the State's intervention such that its intended motion for transfer will not delay resolution of this case by allowing summary judgment briefing to commence and proceed concurrently with any motion to transfer. The State has indicated that it immediately plans to file a motion to transfer to the Western District of Louisiana. Dkt 13 at 23 n.11. At the same time, the State argues in its motion that its intervention "will not unduly delay this litigation." *Id*. at 23. In an effort to prevent such undue delay, Plaintiffs asked the State to agree not to delay the commencement of summary judgment briefing with its motion to transfer. While the State agreed to expedite briefing on the motion, it would not agree to allow summary judgment briefing to commence while that motion was pending. Plaintiffs have demonstrated that early summary judgment is critical and that there is good cause to expedite consideration of the merits. Pls.' Notice Req. Pre-Mot. Conference, Dkt. 11 (Sept. 8, 2021). The State's motion to transfer will raise a collateral issue that Federal Defendants have not raised, based on a mischaracterization of the proceedings in another case. *See supra* at 2–5. Without the requested condition, the transfer motion will delay the Court's consideration of the merits unnecessarily.

8

There is no question that venue is proper in this district. *See* 28 U.S.C. § 1391(e)(1) (Plaintiffs and Defendants reside here and a substantial part of the events took place in the District of Columbia). In contrast, venue is not proper in the Western District of Louisiana. No defendant or plaintiff resides in the Western District of Louisiana. *See* Dkt. 1 at 4–7 (Compl. ¶¶ 12–15).[2] The challenged decision to hold Lease Sale 257 took place at the Bureau's headquarters in the District of Columbia. *E.g.*, Ex. 2, attached to Defs.' Resp. Pls.' Notice, Dkt. 14-2 at 13 (record of decision signed by the Deputy Assistant Secretary of Land and Minerals Management, who resides in the District of Columbia). None of the events giving rise to the claims arose in the Western District of Louisiana. Further, courts in this District regularly review lease sale decisions and have previously declined to transfer a challenge to a lease sale decision because it is not a "localized controversy." *E.g.*, *Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F. Supp. 2d 70, 78 (D.D.C. 2013). Instead, lease sale decisions involve questions of "national policy or national significance" because they open "a vital national resource reserve held by the Federal Government for the public" and take place "beyond the bounds of any state." *Id*. at 77–78 (citations omitted). Finally, it is not likely that this case could be consolidated with *Louisiana v. Biden*, even if this Court granted transfer. Just yesterday, the Western District of Louisiana confirmed that the issues in the two cases "are not the same." Ex. 1 at 2. As a result, Plaintiffs respectfully request that this Court impose a condition that would allow summary judgment briefing to commence before resolution of a motion to transfer.

*Second*, this Court should limit the State's participation in this litigation so as not to delay or complicate the issues beyond those presented. The State devotes significant portions of its

---

[2] *See also* https://www.boem.gov/contact-us (indicating that the Bureau has headquarters in the District of Columbia and a Regional Office in New Orleans, outside the Western District).

9

motion to discussing circumstances and desires that have nothing to do with this case. *E.g.*, Dkt. 13 at 13 (arguing that "Louisiana [] has an interest in opposing Plaintiffs' attempt to impose onerous and unlawful standards on [] leasing processes" under OCSLA); *id*. at 14 ("Plaintiffs seek to undermine this system of expeditious and orderly development by fundamentally altering the way [the Bureau] analyzes the effects of oil and gas lease sales under OCSLA."); *id*. at 19–20 (indicating the State's interest in arguing that the Bureau "lack[s] discretion to cancel or pause Lease Sale 257" under OCSLA and stating it seeks "a definitive ruling that rejects Defendants' discretion to rescind Lease Sale 257's" decision). The discretion of the Bureau to cancel or delay a lease sale under OCSLA is not at issue in this case. The issue in this case centers on the Bureau's obligation to comply with NEPA and conduct the thorough environmental review required under that statute. It is apparent from the State's motion that the State wishes to create a litigation morass for the Court and the parties and delay the case with collateral issues.

Plaintiffs therefore ask this Court to impose a condition requiring the State to confine its arguments to the existing claims in this action and not to interject new claims or stray into collateral issues in order to ensure the fair and efficacious resolution of this case. *See, e.g.*, *Friends of the Headwaters v. U.S. Army Corps of Eng'rs*, 2021 WL 1061162, at *4 (D.D.C. March 20, 2021) (barring intervenors from raising new claims or collateral issues); *Red Lake*, 338 F.R.D. at 6 (imposing such a condition); *Salazar*, 272 F.R.D. at 21 (same); *W. Org. of Res. Councils*, 2015 WL 13711094, at *7 (same). Such a condition would provide an equitable and adequate way for the State to represent its interests as related to the issues in this case, while avoiding the problem of a single lawsuit becoming "fruitlessly complex or unending." *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969).

*Third*, Plaintiffs respectfully ask the Court to limit any memoranda filed by the State in support of or in opposition to a motion so as not to exceed twenty (20) pages and limit any reply memoranda to ten (10) pages. This condition will ensure the expedient resolution of this case while preserving space for the State to assert its position on the claims at issue. In particular, imposing page limits will help to ensure that the State does not stray into collateral issues or complicate the review. *See, e.g.*, *W. Org. of Res. Councils*, 2015 WL 13711094, at *7 (limiting intervenors to less than half the page limits provided by local rules); *Salazar*, 272 F.R.D. at 20–21 (imposing page limits).

## CONCLUSION

The State can adequately present its views by participating as *amicus*, should they seek leave to do so. In the alternative, imposing these four reasonable conditions will provide an equitable and adequate way for the State to represent its interests in this case, while avoiding problems of delay, unending litigation, excessive briefing, and promoting the timely resolution of the issues in dispute. Plaintiffs respectfully request that this Court impose these conditions in any order granting intervention by the State.

Respectfully submitted this 17th day of September, 2021.

/s/ Brettny Hardy
Brettny Hardy (*pro hac vice*)
EARTHJUSTICE
50 California St., Suite 500
San Francisco, CA 94111
415-217-2000 Telephone
415-217-2040 Fax
bhardy@earthjustice.org

Stephen D. Mashuda (DC Bar No. WA0005)
Shana Emile (*pro hac vice*)
EARTHJUSTICE
810 Third Ave., Suite 610

Seattle, WA 98104
206-343-7340 Telephone
415-217-2040 Fax
smashuda@earthjustice.org
semile@earthjustice.org

*Attorneys for Plaintiffs Friends of the Earth, Healthy Gulf, Sierra Club, Center for Biological Diversity*