UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| FRIENDS OF THE EARTH, *et al.*, | : | | |
| | : | | |
| *Plaintiffs*, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 21-2317 (RC) |
| | : | | |
| DEBRA A. HAALAND, *et al.*, | : | Re Document No.: | 31 |
| | : | | |
| *Defendants*, | : | | |
| | : | | |
| STATE OF LOUISIANA, | : | | |
| | : | | |
| *Intervenor-Defendant*. | : | | |

**MEMORANDUM OPINION & ORDER**

**GRANTING AMERICAN PETROLEUM INSTITUTE'S MOTION TO INTERVENE**

**I. INTRODUCTION**

Plaintiffs Friends of the Earth, Heathy Gulf, Sierra Club, and Center for Biological Diversity initiated this action to challenge Offshore Oil and Gas Lease Sale 257 in the Gulf of Mexico. Compl. ¶ 1, ECF No. 1. Plaintiffs sued the Secretary of the United States Department of the Interior, the Assistant Secretary of the Interior for Land and Minerals Management, the Department of the Interior, and the Bureau of Ocean Energy Management—collectively, the Federal Defendants. *Id.* They allege that the Federal Defendants violated the National Environmental Policy Act (NEPA) and the Administrative Procedure Act (APA). *Id.* ¶¶ 1, 5–8. As relief, Plaintiffs ask the Court, *inter alia*, for a declaration that Federal Defendants' "[d]ecision to hold Lease Sale 257 violates NEPA and its implementing regulations, and is arbitrary and capricious and not in accordance with law in violation of the APA," to vacate the Record of Decision to hold Lease Sale 257 and subsequent executed leases, and for "any other

appropriate injunctive relief to ensure that [Federal] Defendants comply with NEPA and the APA . . . ." *Id.* at 51–52. The State of Louisiana later sought to intervene as a defendant. *See generally* State of Louisiana's Mot. Intervene, ECF No. 13. The Court granted that request on September 22, 2021. Order, ECF No. 24.

Subsequently, API moved to intervene as a defendant. API's Mot. Intervene, ECF No. 31. Plaintiffs do not oppose API's proposed intervention, but ask that API's involvement in the case be "subject to three reasonable conditions." Pls.' Resp. API's Mot. Intervene ("Pls.' Resp.") at 1, ECF No. 37. As discussed below, the Court grants API's motion to intervene as a matter of right and does not impose additional limitations on API's participation.[1]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) provides that:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2); *see also Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) ("A district court must grant a timely motion to intervene that seeks to protect an interest that might be impaired by the action and that is not adequately represented by the parties."). The D.C. Circuit has held that Rule 24(a) requires that parties seeking to intervene as a matter of right establish four distinct elements: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the

---

[1] Because the Court finds that API may intervene as of right, it does not assess its request that the Court use its discretion to permit intervention under Rule 24(b)(1)(B). *See* API's Mot. Intervene at 18.

applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C.Cir.1998)).[2]

### III.  ANALYSIS

#### A.  Intervention as a Matter of Right

To determine if a motion to intervene is timely, "courts should take into account (a) the time elapsed since the inception of the action, (b) the probability of prejudice to those already party to the proceedings, (c) the purpose for which intervention is sought, and (d) the need for intervention as a means for preserving the putative intervenor's rights." *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 12 (D.D.C. 2010).  Here, API moved to intervene approximately six weeks after Plaintiffs filed their complaint, and less than one month after the Court granted Louisiana's motion to intervene.  *See, e.g., Karsner*, 532 F.3d at 886 (granting a motion to intervene filed less than one month after plaintiff's complaint); *Roane*, 741 F. 3d at 152 (finding the fact that the proposed intervenor "*could* have intervened earlier" did not mean his failure to do so constituted undue delay risking prejudice to the existing parties) (emphasis in original). API did not seek any adjustment to the briefing schedule set out by the Court in its September 22, 2021 Order, and instead pledged to comply with the deadlines imposed by that ruling.  API's Mot. Intervene at 11.  Plaintiffs neither argue that API's participation in this matter would be prejudicial nor oppose API's intervention outright.  *See generally* Pls.' Resp.

---

[2] Although "intervenors must demonstrate Article III standing," *Deutsche Bank Nat. Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013), in this Circuit "[t]he standing inquiry is repetitive in the case of intervention as of right because an intervenor who satisfies Rule 24(a) will also have Article III standing," *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008); *see also WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 13 n.5 (D.D.C. 2010) ("In most instances, the standing inquiry will fold into the underlying inquiry under Rule 24(a): generally speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*.").  The Court thus does not separately analyze the movant's standing.

3

As to the second and third factors, the "putative intervenor must have a legally protected interest in the action," *WildEarth Guardians*, 272 F.R.D. at 12 (internal quotation marks omitted), and the action must threaten to impair the putative intervenor's proffered interest in the action, *Karsner*, 532 F.3d at 885. "The test operates in large part as a practical guide, with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process." *WildEarth Guardians*, 272 F.R.D. at 12–13 (internal quotation marks omitted).

API represents more than 600 companies involved in the oil and natural gas industry. API's Mot. Intervene at 6. These entities take part in the exploration, production, shipping, transportation, and refining of crude oil, and are "deeply engaged in the exploration for and development of offshore oil and gas resources . . . including in the Gulf of Mexico." *Id.* To do so, private companies acquire leases through a sealed bidding process. *Id.* at 13. "Operations for the exploration and development of oil and gas resources on a lease are conducted pursuant to plans and permits that [the Department of the] Interior must approve." *Id.* Including through bidding during lease sales, such as Lease Sale 257, API's members annually devote billions of dollars to develop resources from federal leases in the Gulf. *Id.* at 6. Having already seen members invest "in reliance on the availability of adjacent or nearby lease tracts," API fears its members could lose their capital if unable to obtain additional plots in close proximity. *Id.* at 6–7.

Despite its status as a trade association, API's proposed intervention is nonetheless appropriate in the context of Rule 24 because its members benefit financially from oil and gas leases. API has an interest in this action because "[a]n association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right,

4

the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. Inc.*, 528 U.S. 167, 181 (2000).  In light of their bidding for offshore oil and gas leases and subsequent development, at least some of API's individual members could likely participate in this litigation if they sought to do so.  While these entities likely have standing to sue and interests germane to API's underlying mission, their involvement in the lawsuit is not required.  Permitting API's intervention in this case thus comports with efficiency and due process considerations.  *WildEarth Guardians*, 272 F.R.D. at 12–13.

If Plaintiffs were successful in this case, the economic and regulatory interests of API's members would likely be impaired.  Plaintiffs' requested relief would impact API's members' ability to acquire additional leases and develop existing ones.  API's Mot. Intervene at 15.  API has demonstrated that this matter features a question "of such a direct and immediate character that [API] will either gain or lose by the direct legal operation and effect of the judgment." *Defs. of Wildlife v. Jackson*, 284 F.R.D. 1, 6 (D.D.C. 2012) (internal quotations omitted).  Plaintiffs do not contest this point.  *See* Pls.' Resp. at 1, 3.  The Court therefore concludes that API has legally protectable interests that may be impaired by this action.  *See WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010) (recognizing that "the interest of a prospective defendant-intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan"); *see also Cnty. of San Miguel v. MacDonald*, 244 F.R.D. 36, 44 (D.D.C. 2007).

With respect to the fourth factor, an intervenor must show that the existing parties do not adequately represent its interests.  *Karsner*, 532 F.3d at 885.  The burden of showing that the

representation of the existing parties "may be inadequate" is "minimal." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quotations omitted).  According to Plaintiffs, API and Louisiana have "substantially similar economic interests . . . ." Pls.' Resp. at 3.  API disagrees, arguing that Louisiana's interests in this matter are "strikingly divergent" from its own.  API's Reply Supp. Mot. Intervene ("API's Reply") at 3, ECF No. 39.  While API worries that Plaintiffs' lawsuit threatens its members' ability to maintain the confidentiality of proprietary bidding information, it claims Louisiana does not have the same concern.  *Id.* at 3–4.  The movant also highlights this litigation's threat to its members' existing investments, distinguishing it from any "comparable economic risk" on Louisiana's part because the state "does not spend anything on acquiring and operating offshore federal oil and gas leases." *Id.* at 4.  Moreover, API posits its members' interests in bidding on Lease Sale 257 and federal case law concerning NEPA-based challenges to offshore federal oil and gas leasing are fundamentally different than those of Louisiana.  *Id.* at 4–5.  API ultimately notes that some of its members do not own offshore leases, instead providing various services and materials to those that do.  *Id.* at 5.  Though API concedes "Louisiana has an interest in the economic activity arising from these operations (*e.g.*, in jobs and tax revenues)," it is "categorically different" than the priorities of API's members whose livelihoods depend on them.  *Id.*

Given that the bar for showing inadequate representation by existing parties is low, the Court is satisfied that API surpasses this threshold.  *Fund For Animals, Inc.*, 322 F.3d at 735.  As noted, API provides a litany of compelling reasons why Louisiana cannot appropriately represent its interest.  API's Reply at 3–6.  It is also well-established in this Circuit that "governmental entities do not adequately represent the interests of aspiring intervenors" because the government's obligation is to represent the interests of its citizens, whereas an intervenor's

interests are often more particular. *Fund For Animals, Inc.*, 322 F.3d at 736–37. Plaintiffs' legal position and proposed relief in this litigation run counter to API's interests. API's Mot. Intervene at 16. The Federal Defendants have a duty to maintain and preserve the interests of the American people, directly participating in the regulation of API's members. *Id.* at 17. Similarly, Louisiana's responsibility in this matter is on behalf of its citizens. Because API represents the interests of its own specific members, and in light of API's contentions detailed above, the governmental parties in this case do not adequately represent API's interests. *See Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 321 (D.D.C. 2015) ("We look skeptically on government entities serving as adequate advocates for private parties.").

Ultimately, because API meets the four requirements of Federal Rule of Civil Procedure 24(a), the Court must permit it to intervene. Accordingly, it will grant API's motion for intervention as a matter of right.

### B. Proposed Conditions on Intervention

To safeguard against changes in API's future motions or relief sought, Plaintiffs ask the Court to "require API to confine its arguments to the existing claims in this action and to bar API from bringing cross- or counter-claims or filing any other motions that are not already accounted for in the current briefing schedule." Pls.' Resp. at 5. Plaintiffs are wary that API "reserve[d] its right to revisit the issue in the event matters not currently addressed by the Court's scheduling order arise in this case." *Id.* Plaintiffs are also correct that the Federal Rules prohibit an intervenor from revealing its positions after it is granted intervention. *Id.*; *see also* Fed. R. Civ. P 24(c) ("The motion [to intervene] must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."). Yet Plaintiffs acknowledge that in conferring with API, the movant indicated it does not plan to expand the

issues in the case beyond the current briefing schedule. Pls.' Resp. at 5. To that end, API has complied with the current briefing schedule, submitting its proposed answer and motion for summary judgment in a timely manner.[3] *See generally* API's Proposed Answer, ECF No. 41; API's Proposed Mot. Summ. J., ECF No. 43. API has likewise stated it has no intention to file cross- or counter-claims, and merely reserves its right to make future filings based on "matters that are currently unknown or unanticipated." API's Reply at 8. The Court has thus not been given a reason to suspect that, absent such proposed restrictions on API's intervention, Plaintiffs will suffer prejudice. *See Roane*, 741 F.3d at 152 ("[I]n the absence of any indication that [the applicant's] intervention would give rise to . . . prejudice, [the applicant's] motion was timely . . . ."). In turn, the Court declines to impose Plaintiffs' condition concerning API's possible future motions in this matter.

Nor is the Court persuaded that either of Plaintiffs' two remaining proposed limitations are needed in this case. Plaintiffs first ask the Court to "require Intervenors to file joint briefing or share page limits." Pls.' Resp. at 2. Plaintiffs likewise argue that in the event API, the State of Louisiana, and the Federal Defendants move for summary judgment, Plaintiffs should be allowed to respond with consolidated briefings "with extended page limits adequate to address arguments in the three separate motions." *Id.* Plaintiffs assert these conditions are warranted because API has failed to demonstrate that Louisiana will not adequately represent its interests in this matter. *Id.* at 2–3.

For the reasons discussed above, the Court has already determined that the State of Louisiana does not adequately represent API's interests as it relates to this litigation. Because

---

[3] As noted below, those submissions are deemed filed pursuant to this Order, and API's Proposed Motion for an Extension of Time to File Answer, ECF No. 31-2, is granted in part *nunc pro tunc* to allow API to file its answer on or before November 7, 2021.

API and Louisiana do not share identical concerns in the matter, the Court agrees that Plaintiffs' proposal that the Intervenor-Defendants file a single brief or share page limits "is counter-productive [and] unnecessary . . . ." *Id.* at 6; *see Wildearth Guardians*, 272 F.R.D. at 20 (rejecting plaintiffs' suggestion that intervenors must consolidate briefs). Considering API and Louisiana's differing priorities, the Court believes the Intervenor-Defendants will be able to confer and guard against redundancy in their filings without the Court imposing the onerous limitation of joint briefing. Additionally, although the Court seeks to conserve judicial resources, given that "the aim of [allowing intervention is] disposing of disputes with as many concerned parties as may be compatible with efficiency and due process," the Court is not convinced that limiting intervenors to the same arguments would serve the efficient conduct of the proceedings. *Wildearth Guardians*, 272 F.R.D. at 13. Accordingly, the Court declines to grant Plaintiffs' proposed joint briefing limitation.

Finally, the Court considers Plaintiffs' request that they be allowed to submit a single, consolidated brief with expanded page limits in the event of multiple summary judgment filings by other parties. Pls.' Resp. at 2. The Court has already granted Plaintiffs leave to file a consolidated opposition in excess of the relevant page limits in response to the multiple pending summary judgment motions, making this proposed limitation moot. *See* Min. Order granting Pls.' Unopposed Mot. for Leave to File Excess Pages (Nov. 23, 2021). And given that "[a]ll parties agree[d]" to Plaintiffs' wish to file "a consolidated response with reasonable adjustments to the page limit for response brief," Pls.' Resp. at 4, the Court has no doubt that the parties can again reach a similar agreement in the event further briefing in this case takes place. Therefore, formally imposing Plaintiffs' desired limitation is unnecessary.

## IV.  CONCLUSION

For the foregoing reasons, the American Petroleum Institute's motion to intervene is hereby **GRANTED**.

It is **FURTHER ORDERED** that the caption in this case is amended to reflect the same.

It is **FURTHER ORDERED** that API's Proposed Motion for an Extension of Time to File Answer, ECF No. 31-2, is granted in part *nunc pro tunc* to allow API to file its answer on or before November 7, 2021.

It is **FURTHER ORDERED** that the American Petroleum Institute's proposed Answer, submitted to the Court on November 3, 2021, ECF No. 41, is hereby deemed filed.

It is **FURTHER ORDERED** that the American Petroleum Institute's proposed Motion for Summary Judgment, submitted to the Court on November 10, 2021, ECF No. 43, is hereby deemed filed.

**SO ORDERED**.

Dated: December 11, 2021                                          RUDOLPH CONTRERAS
                                                                  United States District Judge