UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| FRIENDS OF THE EARTH, *et al.*, | : | | |
|    *Plaintiffs*, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 21-2317 (RC) |
| | : | | |
| DEBRA A. HAALAND, *et al.*, | : | Re Document No.: | 53 |
|    *Defendants*, | : | | |
| | : | | |
| STATE OF LOUISIANA, | : | | |
|    *Intervenor-Defendant*, | : | | |
| | : | | |
| AMERICAN PETROLEUM INSTITUTE, | : | | |
|    *Intervenor-Defendant*. | : | | |

**MEMORANDUM OPINION & ORDER**

**DENYING CHEVRON'S MOTION TO INTERVENE IN SUPPORT OF DEFENDANTS**

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Friends of the Earth, Healthy Gulf, Sierra Club, and Center for Biological Diversity initiated this action to challenge Offshore Oil and Gas Lease Sale 257 in the Gulf of Mexico. Compl. ¶ 1, ECF No. 1. Plaintiffs sued the Secretary of the United States Department of the Interior, the Assistant Secretary of the Interior for Land and Minerals Management, the Department of the Interior, and the Bureau of Ocean Energy Management ("BOEM"), alleging that the federal defendants violated the National Environmental Policy Act (NEPA) and the Administrative Procedure Act (APA). *Id.* ¶¶ 1, 5–8. As relief, Plaintiffs ask the Court, *inter alia*, for a declaration that Federal Defendants' "[d]ecision to hold Lease Sale 257 violates NEPA and its implementing regulations, and is arbitrary and capricious and not in accordance with law in violation of the APA," to vacate the Record of Decision to hold Lease Sale 257 and subsequent executed leases, and for "any other appropriate injunctive relief to ensure that

[Federal] Defendants comply with NEPA and the APA . . . ." *Id.* at 51–52.  Since then, the State of Louisiana and the American Petroleum Institute (API) have sought and been granted leave to intervene as defendants.  *See* State of Louisiana's Mot. Intervene, ECF No. 13; Order of Sept. 22, 2021, ECF No. 24; API's Mot. Intervene, ECF No. 31; Mem. Op. & Order Granting API's Mot. Intervene, ECF No. 60.

The challenged lease sale was held on November 17, 2021.  Chevron U.S.A., Inc.'s Mot. Intervene Supp. Defs. ("Chevron Mot.") at 1, ECF No. 53.  Chevron was the apparent high bidder on 34 tracts in that sale, leading it to seek intervention in this action to protect its asserted interests.  *Id.*  Intervenor-Defendants Louisiana and API and the Federal Defendants do not oppose intervention.  *Id.*; Defs.' Resp. Chevron's Mot. Intervene, ECF No. 56.  Plaintiffs have filed an opposition, Pls.' Opp'n Chevron's Mot. Intervene ("Pls.' Opp'n"), ECF No. 59, to which Chevron has filed a reply, Chevron U.S.A., Inc,'s Reply Supp. Mot. Intervene Supp. Defs. ("Chevron Reply"), ECF No. 63.  For the reasons below, the Court will deny Chevron's motion without prejudice, but will grant it leave to file its proposed motion for summary judgment as an *amicus* brief.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) provides that:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2); *see also Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) ("A district court must grant a timely motion to intervene that seeks to protect an interest that might be impaired by the action and that is not adequately represented by the parties.").  The D.C.

Circuit has held that Rule 24(a) requires that parties seeking to intervene as a matter of right establish four distinct elements: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998)).

In contrast, permissive intervention under Rule 24(b) may be permitted "[o]n timely motion" to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "[T]he putative intervenor must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). "In deciding how to exercise its discretion, the Court may also consider such factors as the nature and extent of the applicant's interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to . . . the just and equitable adjudication of the legal question presented." *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (quotations omitted).

### III.  ANALYSIS

#### A.  Intervention as a Matter of Right

In order to be granted intervention as of right, "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate

representative of the applicant's interests." *Karsner*, 532 F.3d at 885 (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d at 156).

1. Legally Protected Interest and Harm to that Interest

The Court begins with the second and third factors, which require that the "putative intervenor must have a legally protected interest in the action," *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 12 (D.D.C. 2010) (internal quotation marks omitted), and the action must threaten to impair the putative intervenor's proffered interest in the action, *Karsner*, 532 F.3d at 885. In this Circuit "[i]n most instances, the standing inquiry will fold into the underlying inquiry under Rule 24(a): generally speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*." *WildEarth Guardians v. Salazar*, 272 F.R.D. at 13 n.5; *see also Akiachak Native Cmty. v. U.S. Dep't of the Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) ("The standing inquiry is repetitive in the case of intervention as of right because an intervenor who satisfies Rule 24(a) will also have Article III standing."). Article III standing requires three elements: "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," "a causal connection between the injury and the conduct complained of," and redressability, meaning it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).

To be sure, Chevron is asserting an expected property interest in the leases rather than a present one. *See* Chevron Mot. at 4. As the apparent high bidder on 34 tracts in Lease Sale 257, Chevron claims it has a reasonable expectation that at least some of those leases will be awarded to it. *Id.* But additional steps remain before the leases are awarded, including completion of an

4

evaluation by BOEM to determine if the bid represents fair market value and review by the Attorney General in consultation with the Federal Trade Commission for antitrust concerns. *See* 2d Decl. Bernadette S. Thomas ¶¶ 5–6, Ex. 1 of Defs.' Unopposed Mot. Extend Briefing Schedule, ECF No. 58-1. Chevron asserts that in past sales it has been "ultimately awarded" leases on "the vast majority of parcels for which it was the high bidder." Decl. Kyle L. Gallman ¶ 6, Ex. B of Chevron Mot., ECF No. 53-2. Although some contingencies remain, the Court holds that Chevron's interest in these 34 tracts is more than merely speculative. The fact that Chevron prevailed in a competitive bidding process makes its interest concrete, and the fact that the 34 tracts are identifiable makes it sufficiently particularized, even if it is ultimately not awarded some of those tracts.

Furthermore, courts have routinely taken a permissive approach to identifying a legally protected interest in highly similar cases, including where Chevron itself sought intervention. *See* Order Granting Intervention at 9, *Gulf Restoration Network v. Zinke*, 18-cv-1674, ECF No. 35 (D.D.C. Dec. 7, 2018) (finding that Chevron had a legally protected interest to intervene in litigation challenging two lease sales in which it had obtained and fully paid for leases in one sale and was the apparent high bidder for certain tracts in the second); Order at 2, *Healthy Gulf v. Bernhardt*, 19-cv-707, ECF No. 22 (D.D.C. June 10, 2019) (granting Chevron intervention in a suit challenging a sale for which it was the apparent high bidder (*see* Chevron's Mot. Intervene at 4–5, *Healthy Gulf v. Bernhardt*, 19-cv-707, ECF No. 19)); *100Reporters LLC v. U.S. Dep't of Just.*, 307 F.R.D. 269, 282, 284 (D.D.C. 2014) (granting intervention where the proposed intervenors had a legally protected interest in whether their "confidential materials [would be] released through a successful FOIA action" and noting the tension between ripeness and Rule 24's timeliness requirement).

The second and third factors "operate[] in large part as a practical guide, with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process." *WildEarth Guardians v. Salazar*, 272 F.R.D. at 12–13 (internal quotation marks omitted); *see also WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 3 (D.D.C. 2017). In keeping with this pragmatic approach, which seeks to "allow intervention by those who might be practically disadvantaged by the disposition of the action," *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998), the Court finds that Chevron's interest in the 34 tracts would be impacted by the resolution of this action in Plaintiffs' favor. *See WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010) (recognizing that "the interest of a prospective defendant-intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan"). Chevron thus has standing and has satisfied the second and third requirements for intervention.

2. Timeliness

"[T]imeliness is to be judged in consideration of all the circumstances," in particular "the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980); *see also WildEarth Guardians v. Salazar*, 272 F.R.D. at 12.

Beginning with the time elapsed, "[t]hough the time elapsed since the inception of the suit is relevant, measuring the length of time passed is not in itself the determinative test because we do not require timeliness for its own sake." *Roane*, 741 F.3d at 151 (quotations and citations

omitted).  "Timeliness is measured from when the prospective intervenor knew or should have known that any of its rights would be directly affected by the litigation," *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (quotations omitted), but the parties disagree about when that moment occurred.  Chevron argues that it intervened only seven days after learning it was the high bidder in the lease sale, giving it a concrete interest in the outcome of this case.  Chevron Mot. at 5.  Plaintiffs disagree, arguing that Chevron knew of its prospective interests well before the sale took place, and that "ripeness is an unsuitable tool for resolving motions to intervene."  Pls.' Opp'n at 12–13 (quoting *100Reporters*, 307 F.R.D. at 282) (alterations omitted).  Although Chevron did not yet know it would be a high bidder, it surely knew at least somewhat in advance that it intended to participate in Lease Sale 257 and that its interests could be affected by the outcome of this litigation.

Waiting until seven days after the sale probably would not have been unreasonable in the context of the average case.  But it was a matter of public record that this case was being briefed on an expedited schedule.  *See* Order of Sept. 22, 2021, ECF No. 24 (setting briefing schedule).  Chevron did not seek to intervene until November 29, *see generally* Chevron Mot., after Plaintiffs had already filed their consolidated Reply and Opposition to the various cross-motions for summary judgment, *see* Pls.' Opp'n at 11.  Chevron's intervention at this point, which would likely require the parties to submit additional briefing, could potentially delay a decision on the merits.  And because the entire purpose of the expedited schedule was to reach a decision on the merits before the leases become effective, such a delay would not merely be prejudicial for its own sake; it could negatively impact the remedies Plaintiffs seek.  *See id.* at 2 (describing the background to the expedited briefing schedule); Pre-Mot. Conf. Tr. at 17, ECF No. 18 (noting that delay might be prejudicial to the plaintiffs).

Chevron acknowledges that its intervention would require "a modest adjustment to the briefing schedule," but attempts to shift the blame for any delay to Plaintiffs themselves, arguing that "Plaintiffs were well aware when they requested the proposed schedule that participants in the Lease Sale would acquire rights that could be affected by the litigation; they should have anticipated that successful bidders would seek to protect those rights by participating in the litigation." Chevron Mot. at 6–7. But "the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the *existing* parties." *Roane*, 741 F.3d at 151 (emphasis added); *see also Amador Cnty., Cal. v. U.S. Dep't of the Interior*, 772 F.3d 901, 905 (D.C. Cir. 2014) ("[D]elay caused by a potential intervenor [is] sufficient to constitute prejudice where a decision on the merits [is] pending."); *United States v. Microsoft Corp.*, No. 98-cv-1232, 2002 WL 319366, at *2 (D.D.C. Feb. 28, 2002) ("[G]iven the complexity of proceedings in this case, the addition of [the proposed intervenor] would unduly delay proceedings and cause prejudice to the parties."). Neither Plaintiffs nor any of the other existing parties had any obligation to take additional would-be intervenors into consideration when agreeing to the expedited briefing schedule.

Chevron additionally argues that its timing is appropriate because of the purpose for its intervention, specifically, "to present argument on the remedy Plaintiffs seek and its impact on Chevron as the apparent high bidder on 34 tracts in the Lease Sale."[1] Chevron Mot. at 5. Indeed, Chevron's proposed motion for summary judgment focuses entirely on the proper

---

[1] There is no support for Chevron's assertion that "The current briefing schedule does not address remedy." Chevron Mot. at 5. Although the Federal Defendants did not address remedies in their Cross Motion for Summary Judgment and requested further briefing if the Court reached that issue, the Court's scheduling order did not limit the scope of the issues for resolution, and Plaintiffs and both Intervenor-Defendants included an extensive discussion on the issue of remedies in their briefs.

remedies and its own interests that are at stake. *See generally* Chevron's Proposed Mot. Summ. J., ECF No. 55. That particular argument, which is the limited purpose of Chevron's proposed intervention, could not have been asserted earlier.

The issue of timeliness is thus close. However, because "a court should be more reluctant to deny an intervention motion on grounds of timeliness if it is intervention as of right than if it is permissive intervention," *Am. Tel. & Tel. Co.*, 642 F.2d at 1295, the Court will turn next to the issue of adequacy of representation rather than deciding solely on the basis of timeliness.

### 3. Adequacy of Representation

With respect to the fourth factor, an intervenor must show that the existing parties do not adequately represent its interests. *Karsner*, 532 F.3d at 885. The burden of showing that the representation of the existing parties "may be inadequate" is "minimal." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quotations omitted). But as with timeliness, "for the issue of adequate representation, it is important to consider the purpose for which intervention is granted." *Am. Tel. & Tel. Co.*, 642 F.2d at 1294.

Chevron first argues that the federal defendants and Louisiana do not adequately represent its interests because they are governmental entities which must represent the interests of their entire populations rather than the more particularized interests of a private party. Chevron Mot. at 12. On this point the Court agrees, as it is well-established in this Circuit that "governmental entities do not adequately represent the interests of aspiring intervenors." *Fund For Animals, Inc.*, 322 F.3d at 736–37; *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 321 (D.D.C. 2015) ("[W]e look skeptically on government entities serving as adequate advocates for private parties.").

9

But API has already been granted intervention in this matter in part for that exact reason. *See* Mem. Op. & Order Granting API's Mot. Intervene at 6.  In granting API's motion, this Court noted API's distinct interests on behalf of its members, including their significant financial investments in current and future leases and "ability to maintain the confidentiality of proprietary bidding information."  *Id.* at 4–6.  And API's Motion for Summary Judgment raises many of the same issues with respect to remedies that Chevron's proposed motion does, including the harm to members from the public release of sealed bids and its members' investments in Lease Sale 257.  *See* API's Mot. Summ. J. at 44–45, ECF No. 43.  Chevron is in fact one of those members on whose behalf API has made those arguments.  Chevron Mot. at 12.

Chevron suggests a handful of ways in which its interests are narrower than API's.  First, it argues that "[s]everal of Plaintiffs' arguments, such as their claims regarding the Rice's whale, pipeline safety, deepwater drilling, hydraulic fracturing, and wind programs, have geographically specific implications."  Chevron Reply at 5.  That may be true, but it does not follow that those implications are material to the resolution of this action.  Plaintiffs challenge the decision-making process in deciding to hold Lease Sale 257, not the specific outcome of which tracts were included.  *See generally* Compl.  A decision in their favor or against them would affect all tracts equally.

Relatedly, Chevron also posits that "API may take positions or even consider resolving the case in a way that would disadvantage specific tracts if necessary to achieve API's ultimate objective of defending the Lease Sale as a whole, rather than the 34 specific tracts that are the focus of Chevron's participation."  Chevron Reply at 5; *see also id.* at 9 ("As a party, Chevron could comment on and contribute input to any proposed settlement.").  But the D.C. Circuit has looked skeptically on intervention that hinged on the possibility of an unfavorable settlement as

10

"hopelessly conjectural." *Deutsche Bank Nat'l. Tr. Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013); *see also U.S. EPA v. City of Green Forest, Ark.*, 921 F.2d 1394, 1401 (8th Cir. 1990) (holding that the district court's first denial of intervention was distinct from the second because even though the proposed intervenors "expressed concerns about possible settlement" in the first motion, at that time "the settlement possibility . . . was merely inchoate").[2] So too here, where the parties have focused their various motions for summary judgment on the legality of the Record of Decision to hold Lease Sale 257 in its entirety, have requested expedited resolution of the underlying legal issues, and have not given any indication of potential settlement discussions. The Court therefore finds that any potential divergence of interests is too speculative to afford Chevron the right to intervene at this time, and that API is adequately and ably representing Chevron's asserted interests in this matter.

\* \* \*

Because API already adequately represents Chevron's asserted interests and the timing of Chevron's proposed intervention would be prejudicial to the existing parties in this matter, the Court holds that Chevron may not intervene as of right.

### B. Permissive Intervention

Chevron has also requested, in the alternative, that the Court grant it leave to intervene permissively. Chevron Mot. at 13. Permissive intervention under Rule 24(b) may be permitted in the Court's discretion "[o]n timely motion" to anyone who "has a claim or defense that shares

---

[2] Moreover, Chevron's sole cited authority holds only that "while an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent." *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986). The fact that Chevron would at most be able to assert potentially unique objections to a potential settlement makes this argument additionally speculative.

11

with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "As its name would suggest, permissive intervention is an inherently discretionary enterprise." *Nat'l Children's Ctr., Inc.*, 146 F.3d at 1046. "[T]he putative intervenor must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Id.*

Chevron's asserted arguments regarding remedies overlap substantially with both the facts and law of the principal dispute, easily satisfying that factor. The Court has also already determined that Chevron's legal interests in the leases is sufficiently concrete, particular, and imminent to satisfy standing. *See supra* Section III.A.1. And the federal questions raised in this case, the resolution of which would impact Chevron's rights, is an independent basis for subject matter jurisdiction. The timeliness of Chevron's proposed intervention remains the key issue, and in particular, the prejudice to the existing parties and the Court's ability to resolve this matter on an expedited schedule.

Because permitting Chevron's participation would likely delay a resolution on the merits of this case, the Court will deny Chevron's request for permissive intervention as well. However, the Court has broad discretion to permit participation as an *amicus curiae*, an alternative that Plaintiffs do not oppose. *See* Pls.' Opp'n at 15. Other courts in this district have allowed would-be intervenors to participate as *amici* if they did not satisfy the requirements for intervention but otherwise offered input that could benefit the Court. *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007) (denying intervention of right and permissive intervention but allowing the proposed-intervenor to file an amicus brief); *Microsoft Corp.*, 2002 WL 319366, at *3 (allowing entity denied intervention "to participate in a limited capacity as *amicus curiae*"). In the interest of both allowing Chevron's

arguments to be considered and avoiding delay in the resolution of this matter, the Court permits Chevron to file its Proposed Motion for Summary Judgment as an *amicus* brief.

Chevron's primary objection to limiting its participation in this way is that it would deprive Chevron of the right to "comment on and contribute input to any proposed settlement." Chevron Reply at 9.  As discussed above, while too highly speculative to permit Chevron's intervention at this stage, there is at least the remote possibility that API's interests could diverge from Chevron's if settlement discussions arise.  Therefore, although the Court denies Chevron's motion to intervene, it specifies that this denial is without prejudice.  If, at a later stage of the litigation, circumstances arise that suggest API would no longer be an adequate representative of Chevron's interests, Chevron may seek to intervene again at that time.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Chevron U.S.A., Inc.'s Motion to Intervene (ECF No. 53) is **DENIED WITHOUT PREJUDICE**.

It is **FURTHER ORDERED** that Chevron U.S.A., Inc. is **GRANTED** leave to file its Proposed Motion for Summary Judgment (ECF No. 55) as an *amicus* brief.

**SO ORDERED**.

Dated: January 15, 2022                                                                    RUDOLPH CONTRERAS
                                                                                                              United States District Judge