## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FRIENDS OF THE EARTH, *et al.*,             :
    *Plaintiffs*,                                       :
                                                               :
    v.                                                         :    Civil Action No.:    21-2317 (RC)
                                                               :
DEBRA A. HAALAND, *et al.*,                  :    Re Document No.:    25
    *Defendants*,                                      :
                                                               :
STATE OF LOUISIANA,                          :
    *Intervenor-Defendant*,                     :
                                                               :
AMERICAN PETROLEUM INSTITUTE,    :
    *Intervenor-Defendant.*                       :

## MEMORANDUM OPINION & ORDER

### DENYING INTERVENOR-DEFENDANT LOUISIANA'S MOTION TO TRANSFER

## I. INTRODUCTION

Plaintiffs Friends of the Earth, Healthy Gulf, Sierra Club, and Center for Biological Diversity initiated this action to challenge Offshore Oil and Gas Lease Sale 257 in the Gulf of Mexico. Compl. ¶ 1, ECF No. 1. Plaintiffs sued the Secretary of the United States Department of the Interior, the Assistant Secretary of the Interior for Land and Minerals Management, the Department of the Interior, and the Bureau of Ocean Energy Management—collectively, the Federal Defendants. *Id.*

The Bureau of Ocean Energy Management ("BOEM") had issued its first Record of Decision for Lease Sale 257 in January 2021, but that ROD was rescinded at the start of the Biden administration consistent with Section 208 of Executive Order 14,008, which "pause[d] new oil and natural gas leases on public lands or in offshore waters pending completion of a

comprehensive review and reconsideration."  *See* 86 Fed. Reg. 6365, 6365–66 (Jan. 21, 2021)

(announcing initial Record of Decision for sale) (Ex. 14 of Pls.' Opp'n, ECF No. 29–16); Exec.

Order No. 14,008, Tackling the Climate Crisis at Home and Abroad § 208, 86 Fed. Reg. 7619,

7624–25 (Jan. 27, 2021) (Ex. 13 of Pls.' Opp'n, ECF No. 29-15) (ordering pause on new

offshore oil and gas leases); 86 Fed. Reg. 10,132 (Feb. 18, 2021) (rescinding Record of Decision

on Lease Sale 257) (Ex. 15 of Pls.' Opp'n, ECF No. 29-17).  Louisiana, along with a coalition of

states, brought suit challenging that recission in the Western District of Louisiana, and the

district court there preliminarily enjoined Interior officials from "implementing the Pause of new

oil and natural gas leases on public lands or in offshore waters," including with respect to Lease

Sale 257.  *Louisiana v. Biden*, No. 2:21-cv-778, 2021 WL 2446010, at *1, *22 (W.D. La. June

15, 2021).  A new Record of Decision for Lease Sale 257 was issued on August 31, 2021.  *See*

Record of Decision for Gulf of Mexico Outer Continental Shelf Oil and Gas Lease Sale 257, Ex.

1 of Defs.' Opp'n, ECF No. 28-1, https://www.boem.gov/sites/default/files/documents/oil-gas-

energy/GOM-LS-257.pdf; 86 Fed. Reg. 50160 (Sept. 7, 2021) (announcing availability of

Record of Decision).

 At that point, Plaintiffs filed the present action alleging that the Federal Defendants

violated the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, and the

Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*  Compl. ¶¶ 1, 5–8.  The State of

Louisiana promptly sought to intervene as a defendant.  *See generally* State of Louisiana's Mot.

Intervene, ECF No. 13.  The Court granted that request on September 22, 2021.  Order of Sept.

22, 2021, ECF No. 24.

 After having been granted intervention in this matter, the State of Louisiana moved to

transfer venue to the Western District of Louisiana, where the *Louisiana v. Biden* litigation

remains pending and on appeal.  *See* Opposed Mot. Transfer & Supp. Statement P. & A. ("Transfer Mot."), ECF No. 25.  Both Plaintiffs and Defendants oppose transfer.  *See* Defs.' Opp'n Louisiana's Mot. Transfer ("Defs.' Opp'n"), ECF No. 28; Pls.' Opp'n Mot. Transfer Venue ("Pls.' Opp'n"), ECF No. 29.[1]  Louisiana has filed a Reply, *see* Louisiana's Reply Supp. Opposed Mot. Transfer ("Reply"), ECF No. 33, and the matter is ripe for consideration.  Because this action could not have been brought in the Western District of Louisiana in the first instance, the Court will deny the motion.

## II.  ANALYSIS

### A.  Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation omitted).  "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."  *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964).  The moving party "bears the burden of persuasion" in demonstrating that a transfer under § 1404(a) is appropriate by making both of two showings: that the action could have been brought in the transferee district, and that the public and private interests favor transfer.  *Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 356 (D.D.C. 2014).  To meet that

---

[1] The American Petroleum Institute has since been granted intervention in support of Defendants as well but has not responded to the Motion to Transfer.  *See* Mem. Op. & Order Granting Am. Petroleum Inst.'s Mot. Intervene, ECF No. 60.

burden, the movant must "show decisively that transfer is proper." *Jalloh v. Underwood*, 300 F. Supp. 3d 151, 155–56 (D.D.C. 2018).

## B. Whether this Action Could have Been Brought in the Western District of Louisiana

First, Louisiana must demonstrate that "the proposed transferee district is one where the action 'might have been brought.'" *Ctr. for Env't Sci., Accuracy & Reliability*, 75 F. Supp. at 356 (quoting 28 U.S.C. § 1404(a)). In actions that raise a federal question by naming a federal agency or a United States official in his or her official capacity as a defendant, venue is proper in any judicial district where: "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). All parties agree that the subsection (B) is the only possible way to satisfy this first step, as none of the defendants nor the plaintiffs reside in the Western District of Louisiana. *See* Defs.' Opp'n at 6–7 (noting that "none of the Plaintiffs" nor "the federal agencies and officials named in the case" reside in the Western District of Louisiana); Pls.' Opp'n at 10–11 (same); Reply at 1–5 (discussing only subsection (B) of the federal venue statute).

The only question is therefore whether "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" in the Western District of Louisiana. 28 U.S.C. § 1391(e)(1)(B). Louisiana argues for a relaxed interpretation of "substantial," but its proposals stretch the meaning of that word too far and are inconsistent with precedent. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) ("[W]e caution district courts to take seriously the adjective 'substantial.'"); *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) ("Events or omissions that

might only have some tangential connection with the dispute in litigation are not enough.");

*Bullock v. Washington Metro. Area Transit Auth.*, 943 F. Supp. 2d 52, 57 (D.D.C. 2013)

("[V]enue is proper if the activities that transpired in the forum district were not insubstantial in

relation to the totality of the events.  Such activities . . . cannot be tangential . . . .") (cleaned up).

1.  Pending Litigation in the Western District of Louisiana

Louisiana's first and primary argument in support of transfer is that this case is related to

*Louisiana v. Biden*, which is currently pending in the Western District of Louisiana.  However,

the presence of related litigation is correctly considered as part of the public and private interest

balancing that only occurs if the proposed transferee venue is proper.  Related litigation may

often overlap with proper venue based on the underlying facts of a case—or may prompt parties

to waive improper venue in the interests of efficiency—but nothing in the text of § 1391(e)(1)

suggests that the mere existence of related litigation in another district can in and of itself give

rise to proper venue if the subsequent case does not independently satisfy the statutory criteria.

Louisiana's two cited cases do not persuade the Court otherwise.  *Ute Indian Tribe of the*

*Uintah & Ouray Rsrv. v. United States Dep't of Interior* considered the existence of "related

litigation concerning the same agency action" as a public interest factor only after noting that

there was no dispute that the plaintiffs could have brought the claims in the transferee forum.

No. 1:18-cv-00547, 2021 WL 4189936, at *12 (D.D.C. Sept. 15, 2021).  Louisiana places great

weight on the court's statement in *Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne*,

246 F.R.D. 315 (D.D.C. 2007), that summarily states, "this Court first finds that plaintiff could

have originally filed suit in the Northern District of California because of the related *Hardwick*

litigation."  *Id.* at 321.  But given that opinion's relatively brief attention to that point and the fact

that it did not appear to be a contested issue, the Court does not find *Me-Wuk Indian Community*

persuasive.  *See id.* at 318 (noting that the federal defendant and the intervenor both favored transfer and summarizing the parties' arguments as focusing on the interests of justice and convenience of the parties).

Furthermore, as both Plaintiffs and Defendants point out—and as the district court overseeing the *Louisiana v. Biden* litigation also concluded—the issues in these two cases "are not the same."  Mins. of Status Conf., *Louisiana v. Biden*, No. 2:21-cv-778 (W. D. La. Sept. 26, 2021), Ex. 3 of Defs.' Opp'n, ECF No. 28-3.  Although many of the same parties are involved, the *Louisiana v. Biden* litigation challenged the recission of the original Record of Decision to hold Lease Sale 257, as well as other sales, based on § 208 of Executive Order 14,008, asserting claims under the APA, the Outer Continental Shelf Land Act ("OCSLA"), and the Mineral Leasing Act.  *See* Compl. ¶¶ 127–77, No. 2:21-cv-778 (W.D. La.) (Ex. 6 of Defs.' Opp'n, ECF No. 28-6).  In contrast, this action challenges the reissuance of the Record of Decision for Lease Sale 257 specifically based on an alleged lack of compliance with NEPA and the APA.  *See* Compl. ¶¶ 169–195.  No NEPA claims are under consideration in the *Louisiana v. Biden* litigation.  In fact, when issuing its preliminary injunction decision, the court there specifically noted that "there is a huge difference between the discretion to stop or pause a lease sale because the land has become ineligible for a reason such as an environmental issue, and, stopping or pausing a lease sale with no such issues and only as a result of Executive Order 14008."  *Louisiana v. Biden*, 2021 WL 2446010, at *13.  Put simply, these two cases challenge different aspects of a larger administrative process for holding Lease Sale 257.  The Western District of Louisiana again reaffirmed its understanding that the legal issues in these two cases are distinct when declining Louisiana's request in that litigation to enjoin the current proceeding before this Court.  Mins. of Status Conf., *Louisiana v. Biden*, No. 2:21-cv-

778 (W. D. La. Sept. 26, 2021), Ex. 3 of Defs.' Opp'n.[2]  The fact that there is some overlap does not mean that Plaintiffs, who are not parties to the other litigation and were denied intervention, could have brought these claims in the Western District of Louisiana in the first instance.

2. Events and Omissions Giving Rise to Claim

"In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." *Nat'l Ass'n of Home Builders v. U.S. EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009) (collecting cases); *accord Mashpee Wampanoag Tribe v. Zinke*, No. 18-cv-2242, 2019 WL 2569919, at *7 (D.D.C. June 21, 2019).  As both Plaintiffs and Defendants point out, the principal decisionmaking processes giving rise to this claim occurred in the District of Columbia and in the Eastern District of Louisiana, not the Western one.  *See* Defs.' Opp'n at 7–8 ("The determination of NEPA adequacy . . . was issued by BOEM's Regional Supervisor of Environment, Gulf of Mexico Regional Office in New Orleans.  The DNA and the 2018 Supplemental Environmental Impact Statement ('SEIS') were prepared by BOEM staff in New Orleans and the District of Columbia.  Further, the public comment process for the 2018 SEIS occurred near New Orleans and three other cities, but not in the Western District of Louisiana.") (record citations omitted); Pls.' Opp'n at 12–13 ("[T]he Department of the Interior's issuance of the August 31, 2021 Record of Decision to hold Lease Sale 257 [was] a decision that was made at the Department's headquarters in the District of Columbia . . . . [T]he EISs that Federal Defendants allege support issuance of the record of decision [were] prepared . . .  in its Gulf of Mexico regional office in New Orleans . . . .

---

[2] With the different issues in these cases properly understood, Louisiana's argument that "these two cases present a grave risk of inconsistent judgments" likewise falls flat, nor does it persuasively argue that a risk of inconsistent judgments alone, if one did exist, can create venue. *See* Reply at 1, 8–9.

Furthermore, even though the Bureau held public comment meetings required under NEPA throughout the Gulf of Mexico region, not a single meeting took place in the Western District of Louisiana.").

Louisiana's most concrete attempt at articulating an event that gave rise to this claim is "Louisiana's role in creating the documents and decisions challenged as deficient" through the OCSLA consultation process. Transfer Mot. At 8. Specifically, Louisiana is one of the states that BOEM must consult with before proceeding with a lease sale under OCSLA. *Id.* But although Louisiana has such a role, Defendants dispute whether that consultation actually occurred at all or whether any part of it would have occurred in the Western District even if it had, *see* Defs.' Opp'n at 10, and Louisiana puts forth no evidence showing otherwise. And even if it had, that consultation would at most be a tangential connection to this case, which does not raise any claims under OCSLA or challenge the consultation part of the process. The OCSLA consultation process may have been central to the litigation in *Louisiana v. Biden*, but it does not make the Western District a proper venue for this litigation.

Rather than point to specific challenged *actions* that occurred in the Western District, Louisiana attempts to rely on the challenged *omissions* that occurred there, arguing that "Plaintiffs base their NEPA claim on a required action that Defendants allegedly failed to take in the Western District of Louisiana." Transfer Mot. At 5. In particular, it points to three studies that Plaintiffs have alleged should have been considered by Defendants: a National Marine Fisheries Service study on the endangered Bryde's whale "that demonstrates that adequate study would require actions in the Western District," a study on the eastern black rail that was conducted within the Western District, and a study that "spotlights emissions in Shreveport, Louisiana, which is within the Western District." *Id.* at 6. Louisiana also makes the related argument that adequate analysis of the

impacts on wildlife would, under Plaintiffs' theory, require additional research to be undertaken throughout Louisiana, including in the Western District.  *Id.* at 5–6.

Even though these studies mention or consider locations in the Western District, the alleged failure to properly consider them occurred either in the District of Columbia or the Eastern District of Louisiana.  The same is true for any additional research that would allegedly need to take place in the Western District—any relevant omission was the lack of a decision to conduct or consider further research.  *See Mashpee Wampanoag Tribe*, 2019 WL 2569919, at *7 (evaluating where "the challenged decision" was made).  Louisiana's citation to *Villa v. Salazar*, 933 F. Supp. 2d 50 (D.D.C. 2013) does not suggest otherwise.  The court in *Villa* found the transferee forum to be a proper venue after considering that "the decision . . . to acquire" the land occurred there and the land itself was located there.  *Id.* at 55–57 (record quotation omitted).  Although it also mentioned that "much of the investigation that formed the basis of [the agency's] decision . . . was conducted" there, *id.* at 55 (record quotation omitted), there is a major difference between the action of conducting research in a given district and the omission of conducting or considering research that would have partially occurred in a district.  The Court declines to read this relatively minor consideration in *Villa* so broadly.

Even more importantly, Plaintiffs have pointed to dozens of studies, some of which have a national and even global scope, that they allege should have been considered or considered more fully.  *See* Compl. ¶¶ 106, 113, 116, 117–21, 126–27, 132–33, 135–37, 139, 144–45, 149, 153, 159–60.  Within that context, the fact that three of those studies touch on research in the Western District is hardly evidence of a substantial nexus to that district.  At most, they indicate that Louisiana has managed to grasp at a few straws.  "Only locations hosting a 'substantial part' of the events that 'directly' give rise to a claim" are proper venues.  *Abramoff v. Shake Consulting, LLC*, 288 F. Supp. 2d 1, 4 (D.D.C. 2003) (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)).

Even taken collectively, the tangential connections to the Western District of Louisiana are neither direct nor substantial.

### 3.  Impact of the Decision

In a similar vein, Louisiana urges this Court to consider where the impacts of the challenged administrative action will be felt.  The Western District of Louisiana will certainly feel some of the impacts of the outcome of this litigation—as will the Eastern District and several other states bordering the Gulf of Mexico.  *See* Compl. ¶¶ 8, 9, 13, 18, *Louisiana v. Biden*, No. 2:21-cv-778 (W.D. La.) (Ex. 6 of Defs.' Opp'n) (describing the interests of Louisiana, Alabama, Mississippi, and Texas relating to the moratorium on oil and gas leases in the Gulf of Mexico).  While such considerations may be appropriately considered when balancing whether the interests of justice favor transfer, they do not independently create a proper venue.  Nor does the fact that this case has both regional and national impacts create a substantial nexus to the Western District of Louisiana in particular.  "[Q]uestions of national policy or national significance are quite appropriately resolved [in the District of Columbia] (or, at least, no more appropriately resolved elsewhere)."  *Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F. Supp. 2d 70, 77 (D.D.C. 2013) (collecting cases).

Louisiana does not identify a single case in which the impacts of an administrative decision alone made venue proper.  Rather, it collects cases where impacts were considered alongside other substantial events or statutorily adequate grounds for venue.  *See, e.g.*, *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 313 (D.D.C. 2015) (noting that "a defendant's choice of forum deserves some weight where the harm from a federal agency's decision is felt most directly in the transferee district" as part of the balancing analysis where the appropriateness of venue in the transferee forum was undisputed) (internal quotation omitted); *Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d 2, 4 (D.D.C. 2013) (noting that "[m]any of the fishermen affected by the challenged regulations . . . are located in Massachusetts" in addition to the fact that "federal officials in Gloucester, Massachusetts, were

involved in writing and promulgating those rules" and that no party disputed that the case could have been brought there); *Intrepid Potash-New Mexico, LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 93 (D.D.C. 2009) (considering the local interest in drilling on land located in New Mexico after determining that venue would be proper because the challenged decision was made by the regional director there and the land was located there); *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001) (considering the impacts of a decision in each proposed forum as part of the balancing factors only after "[m]oving beyond the threshold question" of whether venue would have been appropriate in the transferee district "[b]ecause several of the plaintiffs and defendants reside" there); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996) (holding that venue was proper in the District of Colorado because the entirety of the property at issue was located there in addition to noting that individuals in that district "derive enjoyment from these affected areas").

In contrast, Plaintiffs provide case law holding that impacts alone cannot create proper venue. Pls.' Opp'n at 16–17; *see, e.g.*, *Abramoff*, 288 F. Supp. 2d at 5 ("[T]he fact that the plaintiff may feel damages in [a district] does not create venue under section 1391(a)(2)."); *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1049 n.2 (S.D. Tex. 2000) ("[T]he place where the effects are felt is not in and of itself a proper venue."). The Court agrees. Particularly in a case like this one, where the impacts of any decision will be felt nationwide, much more is needed to create a "substantial" nexus to the claim for venue purposes.

### 4.  Property Giving Rise to the Claim

Finally, Louisiana argues that a substantial portion of the property that is the subject of this action is located in Louisiana. As Plaintiffs point out, Louisiana did not allege the location of any property as the basis for venue in the Western District of Louisiana even in the *Louisiana v.*

*Biden* litigation.  Pls.' Opp'n at 7 (quoting Compl. ¶ 43, No. 2:21-cv-778 (W.D. La.) (Ex. 6 of Defs.' Opp'n, ECF No. 28-6)).  Its attempt to do so here fails as well.

The phrase in § 1391(e)(1)(B) "[where] a substantial part of property that is the subject of the action is situated" has been held "to apply only to suits involving property disputes or in rem actions."  *Steen v. Murray*, 770 F.3d 698, 704 (8th Cir. 2014) (internal quotation omitted) (discussing 28 U.S.C. § 1391(b)(2), which contains the same phrase).  Louisiana primarily relies on *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, to argue that venue would be proper on the basis of the location of property.  That opinion, which involved a challenge to a restoration project following an oil spill, did state in passing that it was undisputed that the case could have been brought in the transferee district because "a substantial part of the property that is the subject of the action" was situated there.  *Id.* at 311 (quoting 28 U.S.C. § 1391(e)(1)(B)).  *Gulf Restoration Network* therefore provides some support for the argument that § 1391(e)(1)(B) reaches beyond purely *in rem* or property actions, but that case still involved "a development project on state-owned land" rather than a "national resource . . . located on the outer continental shelf, beyond the bounds of any state."  *Id.* at 316–17 (internal quotation omitted).

Assuming without deciding that the blocks available in Lease Sale 257 could be considered "property that is the subject of the action," 28 U.S.C. § 1391(e)(1)(B), they are not located in the Western District of Louisiana.  *See Oceana*, 962 F. Supp. 2d at 77 (denying transfer in a case challenging oil and gas leases in the Gulf of Mexico which "will take place on the outer continental shelf, beyond the bounds of any state"); *see also Superior Oil Co. v. Andrus*, 656 F.2d 33, 37 n.6 (3d Cir. 1981) ("Obviously, no judicial districts could have been created in the outer continental shelf lands.").  Accordingly, Louisiana fails to meet its burden of showing that "a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated" in the Western District of Louisiana.  *See* 28 U.S.C. § 1391(e)(1)(B).

### C.  Balancing of Public and Private Interests

Because this case could not have been brought in the first instance in the Western District of Louisiana, the Court need not proceed to the second step of balancing the private and public interest factors.  However, the Court also notes that, in the alternative, it is not persuaded that those factors would favor transfer, either.  Courts consider six private-interest factors: "(1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the location where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) ease of access to sources of proof" alongside three public-interest factors: "(1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home." *Blackhawk Consulting, LLC v. Fed. Nat'l Mortg. Ass'n*, 975 F. Supp. 2d 57, 60 (internal quotations omitted).

Regarding the private interest factors, the Court has already concluded that the claim did not substantially arise in the Western District of Louisiana, the case will be decided based on briefing and the administrative record without the need for witnesses, and the Plaintiffs and Defendants agree that Plaintiffs' choice of this district as a forum is entitled to deference.  *See* Defs.' Opp'n at 17; Pls.' Opp'n at 22; *see also Greater Yellowstone Coal.*, 180 F. Supp. 2d at 128–29 (holding that plaintiffs' choice of forum was entitled to "substantial deference" in an action involving the interpretation of federal statutes of nationwide significance).  As for the public interest factors, "[i]t is of course well settled that no federal court is more competent than any other to resolve questions of federal law" such as the APA and NEPA claims in this case.

*Oceana*, 962 F. Supp. 2d at 78.  Nor is it the entire Western District of Louisiana "as a whole that is familiar with the earlier matter, but rather one particular judge there."  *Id.*  And though Louisiana represents that this case would be assigned to the same judge if transferred, *see* Reply at 12, "then concerns about forum shopping—which implicates the 'systemic integrity' that '[t]he district court . . . must weigh in the balance,'—would present themselves."  *Oceana*, 962 F. Supp. 2d at 78 (quoting *Stewart Org.*, 487 U.S. at 30) (alterations in original).  The Court also fails to see how transfer would create any gains in judicial efficiency when this matter has already been fully briefed with the parties' cross-motions for summary judgment on an expedited basis.  Finally, "[w]here a case involves . . . 'national implications,' the case cannot be considered the type of purely 'localized controversy' that would warrant transfer to the local district court."  *Forest Cnty. Potawatomi Cmty. v. United States*, 169 F. Supp. 3d 114, 118 (D.D.C. 2016) (quoting *Stand Up for California! v. U.S. Dep't of Interior*, 919 F. Supp. 2d 51, 65 (D.D.C. 2013)).

## III.  CONCLUSION

Because this action could not have been brought in the Western District of Louisiana in the first instance, transfer there is not proper under 28 U.S.C. § 1404.  Accordingly, Intervenor-Defendant Louisiana's Motion to Transfer (ECF No. 25) is hereby **DENIED**.

**SO ORDERED**.

Dated: January 20, 2022                                    RUDOLPH CONTRERAS
                                                          United States District Judge