# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE EARTH, et al.,<br>  *Plaintiffs*,<br><br>v.<br><br>DEBRA A. HAALAND, et al.,<br>  *Defendants*,<br><br>STATE OF LOUISIANA,<br>  *Intervenor-Defendant*. | Case No. 1:21-cv-02317-RC |

## SUPPLEMENTAL BRIEF OF INTERVENOR-DEFENDANT THE AMERICAN PETROLEUM INSTITUTE

Alexander Breckinridge, D.C. Bar No. 983736
Jonathan A. Hunter, *pro hac vice*
Sarah Y. Dicharry, *pro hac vice*
JONES WALKER LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8000
Facsimile: (504) 582-8583
jhunter@joneswalker.com
sdicharry@joneswalker.com

*Attorneys for Intervenor-Defendant*
*American Petroleum Institute*

{N4514669.1}

Intervenor-Defendant the American Petroleum Institute ("API") submits this response to the Court's Minute Order.[1]  Interior must complete Sale 257 based solely on the hundreds of sealed bids that Interior opened on November 17, 2021.  Having already opened the bids, it is impossible for Interior to "re-do" that sale and still comply with Congress' mandate of "competitive bidding" for offshore leases because the confidentiality of the bids is forever lost.  43 U.S.C. § 1337(a)(1).  Any remand of the Record of Decision ("ROD") must preserve Interior's ability to timely complete the Sale 257 leasing process.

1.      **Interior must move forward with Sale 257.**   Congress has "mandate[d] that the Secretary, who delegates authority to BOEM, implement lease sales of the OCS in 5-year increments." *Oceana v. Bureau of Ocean Energy Mgmt.*, 37 F. Supp. 3d 147, 174 (D.D.C. 2014).  Enforcing this statutory directive, a Louisiana court ordered Interior to hold Sale 257. *Louisiana v. Biden*, 2021 U.S. Dist. LEXIS 112316, at *64-65 (W.D. La. June 15, 2021).  By publishing the ROD and holding Sale 257, Interior complied with OCSLA's statutory mandate and the Louisiana court's order.  Interior does not have the discretion to decide *not* to move forward with Sale 257; moreover, to avoid the unintended consequence of high bids being "deemed rejected" under 30 C.F.R. § 556.516 if they are not accepted by February 15, 2022, it is essential that BOEM accept the Sale 257 high bids by that date or extend the 90-day regulatory review period.[2]  Any remedy that the Court imposes should require BOEM to take action necessary to prevent the high bids from being "deemed rejected."

---

[1] API continues to assert that Plaintiffs' claims are not ripe and that Interior satisfied NEPA.

[2] *See* 30 C.F.R. § 556.516 (absent BOEM's extension of the 90-day period, any bid not accepted within the 90-day period is "deemed rejected").  To avoid questions about the impact of this lawsuit on the 90-day period, it is essential that Interior accept the Sale 257 high bids or extend the 90-day period. The need for certainty about the status of those bids cannot be overstated.

**2.     Because it is not possible to "initiate a new closed bidding process" that complies with OCSLA's mandate of "competitive bidding," Interior must use the unsealed Sale 257 bids.** After identifying "maintenance of competition" (43 U.S.C. § 1332(3)) as a legislative goal, Congress established that leases would be awarded based on "competitive bidding" and mandated that "[t]he bidding shall be by sealed bid." 43 U.S.C. § 1337(a)(1).[3]

To implement Congress' directive that leasing be based on "competitive bidding," each bidder's valuation of unleased acreage must be confidential before Interior opens the sealed bids. Once Interior opened the hundreds of Sale 257 sealed bids on November 17, 2021, the bidders' valuations lost their confidentiality, making it impossible ever to recreate the competitive marketplace conditions that existed when the sealed bids were submitted. <u>Every bidder (and any party who did not bid) now knows which unleased blocks other bidders believe have the potential for development and the values placed on those blocks</u>. If Interior "initiate[d] a new closed bidding process" (Minute Order) for Sale 257, the pre-sale confidentiality that ensured "competitive bidding" on November 17 could not possibly exist. Emphasizing the public interest in "the integrity of the entire governmental program of selling oil leases on public lands . . . by the process of sealed bids," the D.C. Circuit has recognized that it is not possible to re-conduct an offshore lease sale in the competitive manner required by OCSLA *after* bids have been opened. *Superior Oil Co. v. Udall*, 409 F.2d 1115, 1120 (D.C. Cir. 1969). Interior cannot initiate a "new closed bidding process" (Minute Order) for Sale 257 using "competitive bidding," as required.

---

[3] Market competition is an integral element of the offshore leasing program. *See also* 43 U.S.C. §§ 1334(a) (Interior must consult with Attorney General "with respect to matters which may affect competition"); 1337(c) (anti-trust review of lease sales); 1344(d) (Attorney General may comment on "the anticipated effects of such proposed [Leasing Program] upon competition"); 1352(d) (Interior must protect "the competitive position" of lessees with respect to geologic data); 30 C.F.R. §§ 556.511-.515 ("Restrictions on Joint Bidding").

3.  **Any remand of the ROD should not preclude completion of Sale 257.** Remand of the ROD – with or without vacatur – should not preclude Interior's completion Sale 257. The D.C. Circuit has cautioned:

> If a district court could, in every case, effectively enjoin agency action simply by recharacterizing its injunction as a necessary consequence of vacatur, that would circumvent the Supreme Court's instruction in [*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)] that 'a court must determine that an injunction *should* issue under the traditional four-factor test.'

*Standing Rock Sioux Tribe v. USACE*, 985 F.3d 1032, 1054 (D.C. Cir. 2021). Just as the court in *Standing Rock* "could not order" an injunction "without, as required by *Monsanto*, making the findings necessary for injunctive relief" (*id.*), neither would the remand of the ROD in this case automatically enjoin the progression of Sale 257. Here, consistent with their decision not to attempt to enjoin Sale 257 before it was held, Plaintiffs have been crystal clear that they "do not request any freestanding relief beyond vacatur" of the ROD and, therefore, have not even attempted to demonstrate that a vacatur or injunction of Sale 257 would be warranted.[4]

4.  **In any case, the Court should not vacate either the ROD or Sale 257.** Based on tremendous investments of both personnel time and money, API member companies conduct extensive and costly due diligence and prepare highly confidential, rigorously protected, proprietary valuations of unleased offshore acreage. They then disclose their valuations of certain acreage by submitting sealed bids that Interior opens publicly. At Sale 257, 317 bids were

---

[4] API's prior briefing established that Plaintiffs cannot satisfy the *Monsanto* factors. *See* Doc. 43-1, pp. 42-45. *See also* Doc. 71 (In its Amicus Brief, Chevron explained that the *Monsanto* factors do not warrant injunction here). In response, Plaintiffs clarified that they do not seek injunctive relief. Doc. 52, p. 53-54 (vacatur and injunctive relief are "entirely different" remedies; "[h]ere, Plaintiffs seek … vacatur, and do not request any freestanding relief beyond vacatur"; "future events and decisions[,]" including "how or on what terms the Bureau will enforce its rights over [Lease Sale 257 leases,]" is "a matter for [a court] to decide in the first instance").

submitted totaling more than $198 million, thereby irreversibly making public what was previously highly proprietary and confidential – namely, where and at what price to bid.[5] Attached hereto as *in globo* Exhibit A are Declarations from API member companies illustrating the commercially sensitive nature of the sealed bidding process; these Declarations dispel any notion that Sale 257 could be re-held in the commercially competitive manner required under OCSLA.

Assuming *arguendo* that the Court requires additional NEPA analysis, remand with vacatur of the ROD and/or Sale 257 is neither necessary nor appropriate. In cases involving similar challenges to Interior's sale of onshore oil and gas leases, this Court has concluded that vacating lease sales was unnecessary where NEPA could be satisfied through remand without vacatur. Thus, in *WildEarth Guardians v. Zinke*, this Court remanded the BLM's NEPA documentation underlying eleven onshore lease sales, but declined to vacate the lease sales. 368 F. Supp. 3d 41, 84-85 (D.D.C. 2019) (rather than vacatur, enjoining issuance of permits on the leases until NEPA violations were remedied). *See also WildEarth Guardians v. Bernhardt*, 502 F. Supp. 3d 237 (D.D.C. 2020). Vacatur is particularly unnecessary in this context, as Interior's offshore regulations explicitly authorize the agency to issue "directed suspensions" of leases "[w]hen necessary to comply with judicial decrees prohibiting any activities or the permitting of activities" or "when necessary to carry out the requirements of NEPA." 30 C.F.R. § 250.172. And in any case, given the significant commercially disruptive consequences of impacting the results of Sale 257 – especially now that the sealed bids have been opened – any form of relief that threatens the progression of Sale 257 must be avoided.

---

[5] Lease Sale 257 Bid Recap, p. 18, https://www.boem.gov/sites/default/files/documents/oil-gas-energy/leasing/Sale-257-Preliminary-Bid-Recap.pdf (last visited Jan. 23, 2022).

5. **Conclusion.** In sum, API responds to the Court's Minute Order as follows: (a) Interior does not have discretion to "decide[] whether to move forward with [] Sale 257"; (b) Interior does not have discretion "to initiate a new closed bidding process"; (c) because Interior must continue to process the Sale 257 bids, and to avoid unduly harmful and commercially disruptive consequences, any remand of the ROD should be without vacatur; and (d) under any circumstances, Sale 257 should not be vacated or enjoined.

API respectfully requests that Plaintiffs' Motion for Summary Judgment be denied and that API's Cross-Motion for Summary Judgment be granted. If the Court concludes that Plaintiffs' claims are ripe and the ROD did not satisfy NEPA (which API does not concede), then API requests that the Court enter an Order: (i) remanding the ROD to Interior without vacatur of the ROD or Sale 257; (ii) (regardless of whether the Court vacates the ROD) directing Interior to move forward with Sale 257 by accepting or rejecting the Sale 257 bids by February 15, 2022 and then issuing leases to high bidders; and (iii) if Interior is not prepared to accept or reject all high bids by February 15, 2022, directing Interior to extend the February 15, 2022, deadline.

Dated: January 24, 2022

Respectfully submitted,
*/s/ Jonathan A. Hunter*
Alexander Breckinridge, D.C. Bar No. 983736
Jonathan A. Hunter, *pro hac vice*
Sarah Y. Dicharry, *pro hac vice*
JONES WALKER LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Facsimile: (504) 582-8583
abreckinridge@joneswalker.com
jhunter@joneswalker.com
sdicharry@joneswalker.com

*Attorneys for Intervenor-Defendant,
American Petroleum Institute*

{N4514669.1}

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of January 2022, I caused a true and correct copy of the foregoing Supplemental Brief to be filed with the Court electronically and served by the Court's CM/ECF System upon all attorneys of record.

*/s/ Jonathan A. Hunter*