UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE EARTH, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>DEBRA A. HAALAND, et al.,<br><br>*Defendants*,<br><br>and<br><br>STATE OF LOUISIANA and AMERICAN PETROLEUM INSTITUTE,<br><br>*Intervenor-Defendants.* | Case No. 21-cv-02317-RC |

**SUPPLEMENTAL REMEDY BRIEF**

In its January 19, 2022 Minute Order, the Court asked whether the Department of the Interior ("Interior") would need to initiate a new closed bidding process if the Court remands the Record of Decision ("Decision") for Lease Sale 257 and if Interior thereafter decides to move forward with the sale. As detailed below, the answer depends on whether the Court remands with or without vacatur. The default remedy of vacatur ensures that Interior will consider the environmental consequences of a sale and retain full flexibility and discretion to decide whether and how to move forward. Because vacatur would invalidate Interior's Decision, it would need to initiate a new closed bidding process if it later decided to proceed with a lease sale. Conversely, remanding without vacatur would not necessarily require a new bidding process. But remand without vacatur would prejudice all parties by allowing Interior to issue leases before it completes a full environmental evaluation of the costs and consequences of holding the sale, risking disruptive reliance interests from bidders and hindering Interior's discretion to objectively evaluate all alternatives as required by the National Environmental Policy Act ("NEPA"). That outcome is precisely what the parties and this Court sought to avoid by proceeding on an expedited schedule. Plaintiffs urge this Court to apply the presumptive remedy and vacate Interior's Decision reached in violation of NEPA.

**Scenario 1:** **The Court Remands the Decision *With* Vacatur.**

Vacating and remanding the Decision for Lease Sale 257 invalidates the decision and provides Interior a blank slate needed to comply with NEPA and fully exercise its discretion to decide whether and how to proceed. Vacatur provides Interior discretion to decide not to hold the lease sale at all, to issue a new decision to hold the sale in a different manner (e.g., offering a smaller acreage for lease), or to issue a new decision to hold the sale in the same manner. *See* Pls.' Combined Opp'n Reply Supp. Mot. Summ. J. ("Pls.' Reply"), at 8–9 & n.4, ECF No. 51. If, after environmental review, the agency still decides to offer *any* lease sale, the initial bids would

no longer be valid and Interior would need to reinitiate the closed bidding process.

Vacatur also ensures that Interior fully considers the environmental consequences of the sale *before* deciding whether and how to hold it, as it should have done in the first instance. Agencies must embark on a NEPA review with an "open mind," such that the process could yield a different outcome than originally anticipated. *Kleppe v. Sierra Club*, 427 U.S. 390, 417–18 (1976) (Marshall, J., concurring in part and dissenting in part). A clean slate offered through vacatur is necessary to properly assess the environmental consequences of the lease sale before the decision is made. *See* Pls.' Reply 50–51. For these reasons, courts in this Circuit consider vacatur to be the default and appropriate remedy to correct a NEPA violation. *Pub. Emps. for Env't Resp. v. Fish & Wildlife Serv.*, 189 F. Supp. 3d 1, at *2 (D.D.C. 2016) ("A review of NEPA cases in this district bears out the primacy of vacatur to remedy NEPA violations.").

The D.C. Circuit recently affirmed the importance of vacatur: "Because NEPA is a "purely procedural statute,' where an agency's NEPA review suffers from 'a significant deficiency,' refusing to vacate the corresponding agency action would 'vitiate' the statute." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1052 (D.C. Cir. 2021) (citation omitted). The D.C. Circuit has further cautioned: "[E]xperience suggests that [remand without vacatur] sometimes invites agency indifference." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008) (Griffith, J., concurring); *see Nat. Res. Def. Council v. EPA*, 489 F.3d 1250, 1262–64 (D.C. Cir. 2007) (Randolph, J., concurring) ("A remand-only disposition is, in effect, an indefinite stay of the effectiveness of the court's decision and agencies naturally treat it as such."). Vacatur is necessary to foster an objective NEPA analysis and ensure that all options are on the table for Interior to make a new decision based on what it learns.

Vacatur is warranted because Interior's violations are serious—they go to the heart of the decisionmaking process. *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–

51 (D.C. Cir. 1993); Pls.' Reply 50–51. For example, Interior's failure to accurately estimate and take a hard look at the effects of avoided greenhouse gas emissions under its no action alternative is a serious violation, cutting to the core of NEPA's fundamental purpose "to reduce or eliminate environmental damage" through informed decisionmaking. *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 756 (2004). As the Ninth Circuit held in a case challenging the same NEPA deficiencies, a proper comparison of greenhouse gas emissions resulting from the no action alternative may well lead the agency to "deny the lease altogether." *Ctr. for Biological Diversity v. Bernhardt*, 982 F.3d 723, 740 (9th Cir. 2020). Indeed, when Interior addressed this flaw in its evaluation of Lease Sale 258, it found that—contrary to its earlier assessments—foregoing that lease sale would *prevent* at least 31.4 million tons of GHG emissions. Pls.' Reply 10–11. Given that Lease Sale 258 will only potentially offer 1 million acres[1] (versus 80 million acres here), a corrected analysis for Lease Sale 257 will likely have a dramatic effect on the agency's assessment of the environmental costs and benefits of holding a sale, putting into doubt whether the agency "chose correctly." *Allied Signal*, 988 F.2d at 150.

Intervenors posit adverse consequences from vacatur because the Lease Sale 257 bids are now public. But any consequences are at best minimal and self-inflicted, and cannot outweigh Interior's serious errors and the importance of getting the analysis right. In negotiating and agreeing to the expedited briefing schedule to resolve this case, no party identified the opening of bids as the point at which vacatur would be foreclosed. And with good reason: Interior has the discretion to reject bids before leases become effective. 30 C.F.R. § 556.516(b). And there is no authority for the assertion that a lease sale cannot be vacated once it is held. Vacatur would not prevent companies from submitting competitive bids in the future should Interior decide to

---

[1] 86 Fed. Reg. 60,068 (Oct. 29, 2021) ("The proposed lease sale [258] area comprises 224 OCS blocks, which covers an area of approximately 1.09 million acres.").

proceed with a lease sale after complying with NEPA. While companies may need to factor the availability of their previous bids into any subsequent competitive bid, that is only one of an array of global market factors affecting industry's interest in sales and valuation of leases. Here, in fact, the majority of bids submitted for Lease Sale 257 were *non-competitive*, meaning only one company placed a bid on each area/tract.[2] Although the price of certain lease blocks may rise incrementally if Interior offers another sale and other bidders are interested, this type of competition is contemplated under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1332(3), and is the "nature of doing business, especially in an area fraught with bureaucracy and litigation." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 282 F. Supp. 3d 91, 104 (D.D.C. 2017). It is not a reason to forego vacatur. *See Standing Rock*, 985 F.3d at 1053 (upholding vacatur despite economic disruptions). This is especially true here, where companies entered bids in November 2021 with full knowledge of this litigation and Plaintiffs' requested relief. *See* Pls.' Reply 52. If the companies' risky bidding has affected their future options, Plaintiffs—and the environment—should not pay the penalty. *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 471 F. Supp. 3d 71, 86 (D.D.C. 2020), *aff'd in part, rev'd in part sub nom.*, 985 F.3d 1032 (D.C. Cir. 2021) (refusing to stay vacatur of a pipeline decision based solely on economic concerns because such "economic myopia" is contrary to purpose of NEPA).

**Scenario 2:    The Court Remands the Decision *Without* Vacatur**

If the Court remands the Decision without vacatur, Interior would not have to initiate a new closed bidding process, but its discretion would be both legally and practically limited. Leaving the decision in place allows Interior to complete the lease review process and issue the

---

[2] Bureau of Ocean Energy Management: Gulf of Mexico OCS Region*, OIL and GAS Lease Sale 257 Preliminary Bid Recap* (Nov. 27, 2021), https://www.boem.gov/sites/default/files/documents/oil-gas-energy/leasing/Sale-257-Preliminary-Bid-Recap.pdf (summary showing an average 1.03 number of bids per lease block).

leases. The expedited schedule issued here provided the Court the opportunity to rule before additional steps complicate the remedy. Once leases are issued, industry would invest money and resources into development and Interior would distribute revenues to the states. After Interior completes its environmental review, its options would be limited to keeping the issued leases in place, seeking modifications, or cancelling the leases.

This not only limits Interior's options, it prejudices Plaintiffs and directly undermines the reasons for expedited briefing. Once leases are issued, procedural hurdles make it more complicated for Interior to cancel the leases. Pls.' Notice Req. Pre-Mot. Conf. 5–6, ECF No. 11 (noting Interior's arguments in previous contexts that vacating or canceling leases is too disruptive). Although Interior may be able to suspend activities on any lease, its discretion to cancel a lease once issued is more limited and the process is onerous. Pls.' Reply 41–42. In ordering an expedited schedule, this Court agreed that Plaintiffs could be prejudiced if merits are decided after leases issue. It set the schedule so that the Court had an opportunity to resolve the claims before leases are executed. Pls.' Reply 48–49. Remanding without vacatur would allow leases to issue before Interior can correct and complete its environmental review—resulting in the same prejudice to Plaintiffs that the expedited schedule was intended to avoid.

Further, remanding without vacatur may lead to delay of compliance especially given the greater disruption associated with cancelling the leases after they issue. *See Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020) (noting that if a court orders remand without vacatur "agencies often delay or decline to take action"). Remand without vacatur under these circumstances would give Interior incentive to "build first and conduct comprehensive reviews later." *Standing Rock*, 985 F.3d at 1052. Interior must instead fix its deficient EIS *before* completing the leasing process. Vacatur is the only way to ensure this occurs.

Respectfully submitted this 24th day of January, 2022.

                                          */s/ Stephen D. Mashuda*
                                          Stephen D. Mashuda (DC Bar No. WA0005)
Shana Emile (*pro hac vice*)
EARTHJUSTICE
810 Third Ave., Suite 610
Seattle, WA 98104
206-343-7340 Telephone
415-217-2040 Fax
smashuda@earthjustice.org
semile@earthjustice.org

Brettny Hardy (*pro hac vice*)
EARTHJUSTICE
50 California St., Suite 500
San Francisco, CA 94111
415-217-2000 Telephone
415-217-2040 Fax
bhardy@earthjustice.org

*Attorneys for Plaintiffs Friends of the Earth, Healthy Gulf, Sierra Club, and Center for Biological Diversity*

6